T. W. HARDY, EXECUTOR, v. D. D. RICHARDS, GUARDIAN, MRS. S. B. HARDY.

[54 South. 76.]

1. WILLS. *Provision for widow. Renunciation by guardian of insane widow. Code* 1906, *section* 5086.

Under Code 1906, § 5086, providing for renunciation of will of husband by widow, an insane widow not being competent to elect, and the right of election being purely personal to herself, the election cannot, in the absence of a statute authorizing it, be made by her guardian, except with the sanction of the court. The court of the domicile having jurisdiction of the widow will make the election.

2. EX PARTE PROCEEDING.

The election made by the widow when same is an *ex parte* proceeding and when made by the guardian with the sanction of the court, there is no reason for it being otherwise, the right of election being absolute and incontestable.

APPEAL from chancery court of Lowndes county.

HON. J. F. McCOOL, Chancellor.

Application of D. D. Richards as guardian of Mrs. S. B. Hardy, a *non compos mentis*, to renounce the will of her husband. From a decree by the court ratifying and approving the action of the guardian in making the renunciation, T. W. Hardy, executor of the deceased husband and a legatee, appeals.

The facts are fully stated in the opinion of the court.

*Betts & Sturdivant,* for appellant.

We insist that under the law and circumstances of this case that the will and desire of C. Hardy ought to be respected, and that the court ought not to exercise a power which so far as we have been able to find was never exercised before in Mississippi, to allow a guardian for an insane widow to renounce for her the will of

98 Miss.—40

the husband. As said above, we have not found that this question has been adjudicated in Mississippi. Authorities are not entirely wanting in other states. The case of *Wash* v. *Wash,* 189 Mo., page 352, 87 S. W. 993, 107 Am. S. R. 353, by supreme court of Missouri, holds that a widow's rights to elect to take one-half of her childless husband's lands subject to debts is purely statutory, and cannot be upheld unless she complies with all the provisions of the statute. Judge Freeman's note to this case is as follows (107 Am. S. R. P. 360) : "The statutory right of a widow to elect her rights of dower, and her rights under her husband's will is usually regarded as strictly a personal right, which cannot be exercised by another person in her behalf. This question has arisen in a number of instances in the case of insane widows. See *Van Steenwyck* v. *Washburn,* 59 Wis., page 483, 48 Am. R. P. 532; *Crenshaw* v. *Carpenter,* 69 Ala. 572, 44 Am. R. 539; *Kennedy* v. *Johnson,* 65 Pa. State 451, 3rd Am. R. 650; *Wright* v. *West,* 2 Lea 78, 31 Am. R. 78. Although she was prevented by insanity from making an election in her lifetime, it has been held that the right cannot be exercised after her death by her representative. *Crozier's Appeal,* 90 Pa. St. 384, 35 Am. R. 666. The attention of the court is here called to the case of *Ex parte Delilah Moore,* 7 Howard Miss. 667, to show how strictly practically this same statute, authorizing a widow to renounce her husband's will is construed. At that time the statute fixes six months after the probate of the will, within which the widow shall deliver or transmit to the court where such authentication or probate hath been made a written renunciation, etc. The will was probated June 24th, 1840, on the 28th day of December, 1840, she transmitted to the court a written renunciation of the provisions made for her by the will, and elected to take her legal share of the estate. In the face of a plausible argument as to the harshness of the statute, and as against the common law, the court said: "It

is a dangerous experiment to extend the terms of the statute by construction beyond their obvious import. In attempting this, to moderate the apparent rigor of a rule we may do more mischief than by a strict adherence to it." In view of shortness of the opinions we will not make further quotations. Under a statute providing that a widow must dissent from her husband's will in open court, it was held that the right was purely personal. *Winston* v. *Winston*, 28 N. C. 274; *Lewis* v. *Lewis*, 29 N. C. 72. The privilege of a waiver is purely a personal right, and if the widow is insane, neither she nor her guardian can raise it.

The guardian of widow of unsound mind has no power to elect for her as between the provisions of the will and her legal rights. *Heavenridge* v. *Nelson*, 56 Ind. 90. To the same effect in the N. Y. case, *Camardelia* v. *Schwartz*, sec. 786, under head of Wills in American Digest for 1908, B., 110 N. Y. S. 611, 126 App. Div. 334.

In Alabama under a statute which declares that dissent of the widow from her deceased husband's will must be made in writing and deposited within one year from the probate of the will; it was held that the right to elect was a personal right, and the legislature having no where conferred on the courts the right to elect for a widow, in case of her disability, the courts have no power to create an exception, taking insane persons out of the operations of the statute. *Crenshaw* v. *Carpenter*, 69 Ala. 572, note bottom of page (44 Am. R. 539).

In Georgia, it has been held under their Civil Code, 1895, sec. 4689, (3) that the right of a widow to take a child's share in her husband's estate, depends upon her election so to do within one year after administration is granted, and the law makes no exception in favor of a widow who is insane or under other disabilities. *La Grange Mills* v. *Kever*, 121 Ga. 429, cited in 49 S. E. 300, cited in 5th Current Law, p. 1082, note 36. We are aware

that it has been held otherwise in Michigan, and per-haps elsewhere, but we submit that those states that deny the right are more nearly in harmony with our own courts as decided in *Ex parte Delilah Moore,* 7 Howard Miss. 667.

Any right that is purely personal and which involves the exercise of judgment particularly when in the con-nection with personal sentiment cannot be exercised either by the guardian or the court. The right of elec-tion is purely personal. *Pinkerton* v. *Sargent,* 102 Mass. P. 568; *Heavenridge* v. *Nelson,* 56 Ind. 90; *Collins* v. *Carman,* 5 Md. 505, and 527; *Newcomb* v. *Newcomb,* 13 Bush 544, 26 Am. S. R. 222. We cannot conceive of any right more purely personal or one that partakes more of sentiment than that of a widow to renounce the provisions of her husband's will.

*Alexander & Alexander,* for appellant.

The one question on which practically all of the courts are agreed is that the right of a widow to renounce a will is personal and cannot be made by her guardian when she is insane.

In *Van Steenwyck* v. *Washburn,* 59 Wis. 502, the court, after an exhaustive consideration of this ques-tion and citation of all the authorities says:

"We are not aware of any direct authority which holds that a guardian of an insane widow can elect for her in the absence of a statute conferring such author-ity."

From the authorities referred to in this opinion, and which we have seen, we believe the court will find these the most pertinent: *Turner* v. *Street,* 2 Rand. 404; *Eb-bington* v. *Ebbington,* 5 Mad. 117; *Lewis* v. *Lewis,* 7 Ired. 72; *Kennedy* v. *Johnson,* 65 Penn. 451; *Sherman* v. *New-ton,* 6 Gray 307; *Crenshaw* v. *Carpenter,* 69 Ala. 572; *Welch* v. *Anderson,* 28 Mo. 293; *Pinkerton* v. *Sargent.* 102 Mass. 568.

*William Baldwin,* for appellee.

It may be safely assumed that the court will find that from time immemorial, those courts to whom has been confided the duty of protecting those most helpless members of the human family, lunatics, have always exercised for a lunatic wife, the power of renunciation of the will of the husband, when it appears to the court that such renunciation is for the best interests of the lunatic, who is herself helpless, unless the court protects her.

My own search through the decisions has developed only one court that has ever indicated any willingness to deny that power; that is, the supreme court of North Carolina. In the case of *Lewis* v. *Lewis,* 29 North Carolina, p. 72, the court denied the power, but it will be seen that that court placed its decisions upon the ground that the statute expressly required the widow's dissent in open court, and upon the further ground that a court of law, which was the court where the guardian had filed the renunciation, had no jurisdiction to make the renunciation.

And it will be remembered that while the decisions of the Old North State stand now high in authority, that such was not the case in the early history of that state.

Be that as it may, this decision of the supreme court of North Carolina was so universally condemned that the legislature of that state at once took hold of the question and put the matter at rest, and placed the power beyond denial. (Code of North Carolina, 1855, p. 601, sec. 1). Neither my own search, nor the industry for appellant has, as I understand, developed any other such holding by a court of last resort.

In Alabama, under a statute which declares, that: "Dissent of a widow from her deceased husband's will must be made in writing, and deposited within one year from the probate of the will," Code, section 2293, it was held that the right of election is a personal right,

and the legislature having nowhere expressly conferred on the courts the right to elect for the widow in case of her disability, the courts have no power to create an exception taking insane persons out of the operation of the statute. *Crenshaw* v. *Carpenter*, 69 Ala. 572, 44 Am. Rep. 539. But in this case there was no decision as to the power of a court of chancery to make an election.

Pomeroy's Equity Jurisprudence, vol. 1, § 510 reads:

"In like manner, where the person entitled or bound to elect is a lunatic, the court will make the election on his behalf, after having ascertained, through an inquiry, what action is most for his advantage; and this is the rule, even though the lunatic is under the care of a committee."

And the attention of this court is called to the lengthy note of this learned author, citing the authorities. American and English Encyclopedia of Law, vol. 11, p. 79, reads:

"Insane Widow. An insane widow not being competent to elect and the right of election being purely personal to herself, the election cannot, in the absence of a statute authorizing it, be made by her guardian or committee, except with the sanction of the court. The court of the domicile having jurisdiction of the widow will make an election for her."

And the court will have abundant notes to sustain the text.

The case of *Andrews* v. *Bassett, Adm.*, by the supreme court of Michigan, reported in Lawyers Reports, Annotated, vol. 17, p. 296 *et seq.*, with its ample notes will give a most clear and logical discussion of this question, and its careful inspection is asked.

*Newman Cayce,* for appellee.

The chancery court, through its proper agency, renounced the will of Dr. C. Hardy, and elected to take

98 Miss.]                    Brief for appellee.

for the widow, her statutory rights, as such widow in the estate.

Was this action of the chancery court, in renouncing for its insane ward, the provisions of the will, within its power and jurisdiction as a court? It will be noticed, that section 5086, Code 1906, under the heading of "Right to renounce will in certain cases," providing therein the method of renunciation, by the wife or the husband, entirely pretermits any reference to the method, by which the rights of an insane wife or insane husband, shall be protected and saved to them.

It has been held by the supreme court of Maryland in the case of *Collins* v. *Carman,* 5 Md., page 506, discussing a case similar in principle, to the case at bar, of all persons whom the law regards with the greatest care and tenderness, and zeal, the unhappy lunatic may be considered the first. It is not mere Christian feeling, it is not the consequence of improved civilization, but it is found in our law, from the earliest periods, as ancient as the law itself, that a lunatic can do no prejudice to his person or estate, he can commit no crime, incur no forfeiture, make no contract, limitations do not run against him.

Section 5086, Code 1906, Miss., directing the manner that wife may renounce the will of her husband and elect to take her part allowed by statute, makes no distinction, nor mention of sane or insane wife; a sane wife can make an election and the failure on her part for six months subsequent to the probate is declared to be held as conclusive evidence of her having elected to take under the will, but an insane wife cannot elect, she is incapable of deciding upon the question, as to her interests; she is the ward of the court, and under the exclusive jurisdiction in all matters, and protection of the court as to her person and estate. No authority exists anywhere to act for the insane person, except the chancery court; in matters ministerial, the chancery court acts through

its duly accredited agents, but in matters judicial, as in making an election, in cases of this sort, the court acts for the insane person as a court, either by first directing the guardian, to make the election, or in consenting and approving the act of the guardian in making an election. In either or both cases it is the act of the court, and depends upon the consent and approval of the court for its validity. Neither the guardian, administrator, heirs, nor creditors of an insane person, without the consent and approval of the court (which consent and approval is equivalent to a prior direction) can make an election for an insane person. Only that court, to which the constitution has confided the power and the duty of being in *parens patriae,* can make the election.

The jurisdiction of the court to elect on behalf of a mentally incompetent widow to take against her husband's will has never, so far as my researches have extended, been denied by any court, but has been sustained by all courts where the question has been presented to them.

The Michigan supreme court in the case of *Chas. B. Andrews et al.* v. *John Bassett, Admin. of Mary Andrews, deceased,* reported in 17th Lawyers Reports Annotated, page 296, renders a very lucid and concise opinion in the case involving the same questions presented by this case, and upon a statute practically similar to ours. To this opinion I invite the attention of the court.

ANDERSON, J., delivered the opinion of the court.

Cornelius Hardy died testate, leaving as his sole heir his widow, Mrs. S. B. Hardy, who is a *non compos mentis,* for whom the appellee, D. D. Richards, was appointed guardian, who, for said widow, renounced the will of her deceased husband, which renunciation the chancery court by decree approved, from which decree the appellant, T. W. Hardy, executor, and one of the legatees under the will, appeals to this court. By this will Corne-

lius Hardy provides that the appellant, a second cousin, should be executor without bond, and have the power to sell any or all of his estate, and make conveyances, and reinvest the proceeds of such sales into other property; that certain of his kinspeople should receive legacies in minor amounts, and the remainder of his estate held in trust by the appellant, and the income therefrom expended in keeping up his estate, and supporting and maintaining his widow during her widowhood or lifetime; that in the event of her marriage or death the appellant should have his entire estate, with its accumulations, except the minor legacies referred to above. The amount of the estate at the death of the decedent, which occurred on December 13, 1908, was more than thirty thousand dollars. The widow was fifty-two years old at the time of the death of her husband, and had been in the insane asylum for some years, but had not been regularly declared insane. Within six months after the death of her husband, and after his will had been probated, on a writ of *de lunatico inquirendo* she was duly declared a lunatic, and the appellee, Richards, was by the chancery court appointed her guardian, and filed in the chancery court of Lowndes county, where the will had been probated and where the guardianship was pending, a renunciation of the will, substantially in the language of section 5086, Code of 1906, showing that it was by the guardian for the widow. After making such renunciation, the guardian filed an application to the chancery court of Lowndes county, reciting the action taken by him, and asking the approval of the court. The appellant thereupon appeared to such application and filed an answer, contesting the right of the guardian to make such renunciation. There was a hearing on this issue, on oral testimony taken by agreement in open court, resulting in a decree by the court ratifying and approving the action of the guardian in making the renunciation.

It is contended on behalf of appellant that the guardian of a widow who is *non compos mentis,* with the approval of the court having jurisdiction of the ward, cannot exercise for her the right of election given by section 5086, Code of 1906, not to take under the will of her husband. The provision of the statute referred to, authorizing the wife to renounce the will of her deceased husband, is in this language: "When a husband makes his last will and testament, and does not make satisfactory provision therein for his wife, she may, at any time within six months after the probate of the will, file in the office where probated a renunciation to the following effect, viz.: 'I, A. B., the widow of C. D., hereby renounce the provision made for me by the will of my deceased husband, and elect to take in lieu thereof my legal share of his estate;' and thereupon she shall be entitled to such part of his estate, real and personal, as she would have been entitled to if he had died intestate, except that, even if the husband left no child nor descendant of such, the widow, upon renouncing, shall be entitled to only one-half of the real and personal estate of her deceased husband."

This is a question of first impression in this state. It is claimed that the election authorized by the statute must be the result of the personal judgment of the widow, and therefore, where she is incapable of exercising such judgment, there can be no election; and there is support for this contention in *Lewis* v. *Lewis,* 29 N. C. 72, and *Crenshaw* v. *Carpenter,* 69 Ala. 572, 44 Am. Rep. 539. But in neither of those cases was the question determined whether the court having jurisdiction could make the election for her, or sanctioned such election made by her guardian. The better authority is that the election may be made by the guardian with the sanction of the court. *Andrews* v. *Bassett,* 92 Mich. 449, 52 N. W. 743, 17 L. R. A. 296; 11 A. and E. Ency. Law (2d Ed.), 79. The latter authority states the rule thus: "An insane widow

not being competent to elect, and the right of election being purely personal to herself, the election cannot, in the absence of a statute authorizing it, be made by her guardian or committee, except with the sanction of the court. The court of the domicile having jurisdiction of the widow will make the election for her." In the Andrews case, the election was made by the guardian with the sanction of the probate court having jurisdiction of the ward. There is not one law for a sane and another for an insane widow.

Nor is the contention sound that, if an election may be made, it can only be by a bill in chancery invoking the equity jurisdiction of the court, making all interested persons parties. Section 159 of the Constitution of 1890, by subdivision "e" confers on chancery courts jurisdiction in "cases of idiocy, lunacy, and persons of unsound mind." Such unfortunates, by the Constitution and statutes of this state, are made the wards of the chancery court. The election made by the widow when sane is an ex parte proceeding; and when made by the guardian with the sanction of the court, there is no reason for it being otherwise. The right of election given by the statute is absolute. It is incontestable by either devisees, legatees, heirs, or creditors. They have no interest known to the law which would entitle them to be made parties and contest the right. *Andrews* v. *Bassett, supra,* is directly in point on this proposition, as shown by the facts set out in the report of it in *Bassett* v. *Durfee,* 87 Mich. 167, 49 N. W. 558, where it was first before that court on mandamus.

It is argued that the chancellor was manifestly wrong in his finding of fact that it was to the interest of the widow to elect not to take under the will of her husband, and in approving the election made by the guardian for her. In our judgment, such finding by the chancellor is amply supported by the testimony, and we decline to disturb it.  *Affirmed.*