In the Matter of WILLIAM REEVES, an Insane Person.

*Sussex, July* 17, 1914.

A devise to one and the lawful heirs of his body, but if he die and leave no lawful issue of his body then over to another, creates an "estate tail" in the first devisee.

In the absence of statute a tenant in tail cannot alien for a longer period than his own life, and cannot devise the land; nor is it liable for his debts, except to the extent of his life interest, and at his death the next taker is entitled thereto, not by descent from the tenant in tail, but as substituted devisee.

The Court of Chancery may make an election for a lunatic, that right being vested in the court, and not in the trustee, since it is a judicial, and not a ministerial, determination.

*Rev. Code* 1852, amended to 1893, *p.* 631, *c.* 83, §27, empowering a tenant in tail to alien the land in fee simple, does not abolish estates tail, but only gives the tenant a personal right to dock the entail by making the sale.

While the Court of Chancery had no power independent of statute to adjudicate a person to be a lunatic, it did have, independent of statute, general supervisory powers over the conduct of the committtee or trustee, as part of its general authority over trusts, trustees and fiduciaries.

Under the statute authorizing the trustee of an insane person, appointed by the Court of Chancery, to do whatever is necessary for the care, preservation and increase of the estate, the court may order the trustee of a lunatic holding an estate tail to sell the estate in fee simple, thereby docking the entail, where such a course is to the advantage of the estate.

The rule that equity will not enforce an unexecuted power, or cure a defective execution of a power, does not apply to a property right held by a lunatic, the exercise of which right is to the benefit of his estate.

The statute authorizing the trustee of a lunatic who sells land to convey as full a title as the insane person had at the time of sale does not prevent the court from exercising for the benefit of an insane tenant in tail his right to enlarge the estate by conveying it in fee.

PETITION TO BAR AN ESTATE TAIL.    Edward Taylor, who died on or about March 30, 1897, by his will probated in

Sussex County, disposed of a farm in Broad Creek Hundred and certain lots of land in Laurel, as part of his residuary estate, by the following provision:

"I give and devise to my wife, Martha Taylor, all the residue of my property, real, personal or mixed, to be held by her for and during the period of her natural life or widowhood, and for her to properly educate and clothe the boy, William Reeves, that I now have with me, and at the death or marriage of my said wife, Martha, whichever first occurs, then it is my will that the whole of my said property go to my boy, William Reeves if he then be living, to him and the lawful heirs of his body forever, but in the event of him the said William Reeves dying and leaving no lawful issue of his body, then for the whole of said property to go to my nephew, Stephen Taylor, his heirs and assigns forever, or in the event of the said William Reeves dying before the death or marriage of my said wife, Martha, then and in that case I desire that the said property upon her death or marriage to pass immediately to my said nephew, Stephen Taylor, to him and his heirs and assigns forever."

Martha Taylor survived the testator, and died on August 9, 1898. William Reeves is unmarried, and on September 30, 1898, was adjudged a lunatic, and John H. Elliott was appointed trustee for him by the Chancellor on January 12, 1899. Since 1902 William Reeves has been an inmate of the Delaware State Hospital at Farnhurst, a hospital for the insane, and debts contracted for his support and care there are unpaid. On June 1, 1914, John H. Elliott was removed as trustee and Frank F. Davis appointed in his place.

The trustee appointed for William Reeves by petition asks leave to sell the land which the lunatic holds as tenant in tail, and that he be authorized to sell and convey it as a fee simple and not a fee tail. The reasons for asking for an order to convert the realty into personalty are, that the land is in part unimproved and vacant lots of land, and the rest an untenanted farm with untenantable buildings. There are debts contracted for the care and maintenance of the lunatic, and a sale is asked for for this reason also.

By statute in Delaware a person having a legal or equitable estate in fee tail is empowered to alien the land in fee simple by deed in the same manner and as effectually as if his estate were in fee simple. *Revised Code*, *c.* 83, §27, *p.* 631. A statute

gives to the Court of Chancery the care of insane persons so far as to appoint trustees for them to take charge of them and manage their estates. A trustee is by law empowered to do whatever is necessary for the care, preservation and increase of his estate. If it appears to the Chancellor proper to sell any real estate of an insane person, he may direct such sale to be made by the trustee, and "the trustee shall make a deed to the purchaser, which shall convey as full a title to the land as the insane person had at the time of the sale, subject, however, to any lien properly existing against it at that time." The Chancellor is given power to authorize the expenditure of the proceeds of the sale of land of a lunatic for his support, or benefit, or for the repair, or improvement of his real estate.

Stephen Taylor, the tenant in remainder after the estate of William Reeves, was brought into court by a rule to show cause, and has been heard by counsel in opposition to a sale to dock the entail, if there be a fee tail.

The cause was heard on a motion by the solicitors for Stephen Taylor to dismiss the petition, so far as it asks for an order to sell and convey a fee simple title.

*David J. Reinhardt* and *Daniel J. Layton, Jr.*, for the petitioner.

*Henry Ridgely* and *W. Watson Harrington*, for the tenant in remainder.

The Chancellor. The trustee has assigned sufficient reasons for selling the land held by the lunatic. He also asks that when sold it be sold and conveyed as a fee simple estate and not as an estate tail. It is not admitted by the counsel for the tenant in remainder after the estate of the lunatic that there is an estate tail, though no discussion of this point was had at the argument. It seems clear that William Reeves, the lunatic, took an estate tail under the will of Edward Taylor. After the life estate to his wife, the testator gave his residuary estate to William Reeves and the lawful heirs of his body forever, but if he die and leave no lawful issue of his body, then over to Stephen Taylor. A devise to one and the heirs of his

body is a typical case of fee tail. But the gift over if he die·
and leave no lawful issue of his body would create an estate
tail, even without the preceding words, for they would import·
an indefinite failure of issue. *Hawkins on Wills*, *213; *Forth v.*
*Chapman*, 1 *P. Wms.* 663; *Tiffany on Modern Law of Real*
*Property*, §25. And see note to *Martin v. Roach*, 1 *Harr.* 477, 492.

Assuming, then, that William Reeves has a legal estate
tail in the land, he could, if mentally competent to do so, alien
the land in fee simple in the same manner and as effectually as
if the estate were held in fee simple. This is the right given by
statute in Delaware. Without such relief a tenant in tail could
not alien the land for a period longer than his own life, and
could not devise it. At his death the next taker would be enti-
tled, not by descent from him, but as a substituted devisee. At
common law it would be liable for his debts to the extent only
of his interest for life.

It is urged by the trustee that in Delaware a sale of land
held in fee tail made on execution on a judgment against the
tenant in tail passed to the purchaser a fee simple; *i. e.*, the
remainder as well as the estate of the defendant in the judgment,
and cites *Draper v. Draper*, 5 *Harr.* 358, and *Twilley v. Carey*,
2 *Boyce* (25 *Del.*) 414, 86 *Atl.* 517. But it is not necessary in
this case to so hold. Neither is it necessary to agree that the
statutes respecting sales of land by judicial process allow a
sale of land held in fee tail as though it were held in fee simple.
It is settled, however, that a Court of Chancery may make an
election for a lunatic. 1 *Pomeroy on Equity Jurisprudence*,
§510. It may elect for an insane widow to take either the testa-
mentary provision, or under the law. *Van Steenwyck v. Wash-*
*burn*, 59 *Wis.* 483, 17 *N. W.* 289, 48 *Am. Rep.* 532; *Penhallow v.*
*Kimball*, 61 *N. H.* 596; *In re Est. of Stephen Andrews*, 92 *Mich.*
449, 52 *N. W.* 743, 17 *L. R. A.* 296. It may renounce a legacy
to a lunatic, if it appears beneficial to the lunatic to do so.
*Harding v. Harding*, 140 *Ky.* 277, 130 *S. W.* 1098, *Ann. Cas.*
1912B, 526 (1910), where the court said:

"The fact that the right to elect is a personal one does not interfere
with the right of the court to elect when the individual who might make
the election is alive but incapable of doing so."

It is the court, and not the trustee for the lunatic, that may elect, because the election is a judicial and not a ministerial determination. A choice is involved. A right to elect for a lunatic does not flow from a mere power to manage his property, for that implies a title to the thing to be managed; nor does it flow from a right to sue for and recover property of the lunatic. *Kennedy v. Johnston*, 65 *Pa. St.* 451, 3 *Am. Rep.* 650; *Penhallow v. Kimball*, 61 *N. H.* 596.

Estate tails are not abolished in Delaware, and until docked by an alienation exist and persist. The right to dock the entail is personal, and the tenant in tail could not be forced to act under the statute.

For the tenant in remainder after the estate of William Reeves it is urged that the right of the Court of Chancery over the lunatic and his property only exists by virtue of the statute, and was not inherently in the court, or the Chancellor, and that the statute, being strictly construed, limits the court to a sale of the interest or estate which the lunatic had, and did not authorize the court, or a trustee appointed by it, to sell the land in fee simple, as the lunatic could do if sane. While originally the power to adjudicate a person to be a lunatic was in the Chancellor, by delegation from the crown, and not in the Court of Chancery, independent of statute, still it is equally clear that independent of statute, after the adjudication and the appointment of a committee, or trustee, for the lunatic, the Court of Chancery had general supervisory powers over the conduct and administration of the trustee, or committee, as part of its general authority over trusts, trustees and fiduciaries. 3 *Pomeroy on Equity Jurisprudence*, §310. But independent of these considerations broad powers are given by statute to the court to care for insane persons and their property. The trustee appointed by it to manage the property of the lunatic is expressly empowered by the statute to do "whatever is necessary for the care, preservation and increase of his estate." The court may order a sale and apply the proceeds for the benefit of the lunatic. If sane Reeves could have conveyed his land in fee simple, and as if it were held in fee simple and not in fee tail. It is admittedly for his interest that the land be sold, and when

sold that it be sold and conveyed as a fee simple estate and a fee tail. Yet it is said that the court cannot do for him that which he could not do for himself, and that his misfortune and incompetency deprives him of an advantage he otherwise would have. To carry it further, it is urged that although by statute the duty to care for the lunatic is imposed on the Court of Chancery, with power to appoint a trustee to manage his estate, and do whatever is necessary for the care, preservation and increase of his estate, yet that the court is without power to authorize the trustee to exercise a right which the lunatic has respecting his own property, and which is of substantial advantage to the lunatic and sure to increase his estate. This conclusion is unsound. The right to dock an entail is a property right, valuable to the tenant in tail. He has a choice to exercise it, or not, and so may or may not choose to increase the selling value of the property he owns. But it is a choice respecting property and involves no moral, social, artistic, or sentimental consideration, and no question of public policy or welfare. When this court, or the Chancellor, for the benefit of a lunatic converts into money his property, it deprives him of the opportunity to exercise the choice to bar the entail in case he afterwards recovers his reason. It is, therefore, just and fair that when it sells his land it sell all that he could sell, and in selling it should exercise on his behalf, and for his benefit, any right of property concerning the thing sold, which the lunatic could exercise to his own advantage. Independent of the power to make an election for a lunatic, and aside from the general powers over them and their property, inherent in the Court of Chancery and the Chancellor, the powers conferred by statute in Delaware justify the sale and conveyance of his land as if it were held in fee simple, though in fact it be held as an estate tail only.

It is urged that the lunatic had a power, and that inasmuch as a court of equity will not aid or enforce a power entirely unexecuted by the donee, and will not even give aid to cure a defective execution of a power, if it be given by statute (2 *Pomeroy on Equity Jurisprudence*, §§590, 834), therefore, this court will not exercise the power which the lunatic pos-

Title.

sesses, to convey in fee simple his estate tail. But these principles are not applicable here. If the donee of a power omits to exercise it at all, he thereby indicates his choice, and the court cannot make one for him. This principle does not apply to a property right held by a person of unsound mind, who is incapable of exercising that right, when to do so is beneficial to him. Nor does the rule as to defective executions of statutory powers apply, for there has been no attempt made by the lunatic to execute it, and it may be right that there be an exception even to that rule in favor of a ward of the court.

The chief reliance of those opposing the application is on the statute which says that the trustee selling land of a lunatic shall convey to the purchaser "as full a title to the land as the insane person had at the time of sale." This is relied on to limit the power to sell more than the insane person had. All that the statute means is, that the trustee must convey all the estate which the insane person had at the time of sale, and does not prohibit the court from exercising for the benefit of the lunatic a right to enlarge his estate by ordering a sale and conveyance of a fee simple instead of a smaller estate, just as the lunatic could do if not afflicted.

The motion to dismiss the petition for want of jurisdiction on this point, is therefore, denied, and the rule will be made absolute and an order of sale made as prayed for.*

*NOTE. On appeal the decree of the Chancellor was affirmed. See *post p.* 483.