When Jerome J. Degnan married Helen Hogenson in May, 1928, he owned a policy of insurance on his life for $1,010 issued by Prudential Insurance Company, wherein his sister was named as beneficiary. The following month he took out a second life policy for $1,000 with the same insurer, naming "Helen D. Degnan, wife of insured," as beneficiary and a month later he caused the insurer to endorse on his first policy a change of beneficiary from his sister to "Helen Degnan, wife of insured." The two policies so stood on December 23d 1932, when Degnan was committed to a state hospital for the insane by order of the Hudson orphans court on the certificate of two physicians. By further order of said court entered July 26th, 1933, his wife was appointed guardian of his person and property. She filed a petition in this court February 6th, 1936, for annulment of the marriage (there *Page 471 
was no issue) and November 9th, 1936, received a final decree adjudging the marriage to have been null and void, with leave to resume her maiden name. She thereupon resigned as Degnan's guardian and by order of said orphans court entered March 16th, 1937, Aloysius T. Degnan, the incompetent's brother, was appointed his substituted guardian and Helen Hogenson delivered to said guardian the above mentioned two policies.
Both policies contain identical provisions reserving to the insured the right to change the beneficiary thereunder by written notice to the insurer, such change to become effective when endorsed on or attached to the policies by the insurer and thereafter all rights of the former beneficiary cease. About August 31st, 1937, application was made to the insurer by writing signed by the insured and his guardian, accompanied by the policies, requesting the insurer to endorse on both policies change of beneficiary to the executors, administrators or assigns of the insured and with such application there were delivered to the insurer, affidavits of three physicians to the effect that the application was signed by the insured in their presence after the affiants had interrogated him and ascertained that he understood fully the nature and effect of his act. The insurer declined to recognize the insured's request because he had been declared incompetent and declined also to recognize the guardian's request, but expressed willingness to make the change provided the beneficiary named in the policies consented. She refused, whereupon the substituted guardian presented his petition to the chancellor alleging most of the above facts and praying an order authorizing him to execute such papers as may be necessary to affect the change of beneficiary desired and directing that upon filing such papers with Prudential Insurance Company that company endorse such change on the policies. An order issued directing the insurer and Helen Hogenson to show cause why the petitioner should not have the relief sought and they both appeared, the insurer presenting no opposition but Helen Hogenson (who will hereinafter be called respondent) objecting. Testimony and other evidence *Page 472 
was taken in open court on the issue between petitioner and respondent.
Respondent was appointed guardian of the insured pursuant to section 3(e) of the act concerning idiots and lunatics (Comp.Stat. p. 2785) which authorizes the orphans court to appoint a guardian in the manner provided by the first section of the act, of a person committed to a state asylum on the order of a county judge, where such person possesses property not to exceed $1,000 without the necessity of determining the lunacy by inquest. Under the first section of the act (Comp. Stat. p. 2781) the orphans court is authorized to appoint a guardian of an incompetent "who shall have the care and safe keeping of said idiot or lunatic, his or her lands, tenements, goods and chattels, that the said idiot or lunatic may live and be competently supported and maintained by and out of the same." Respondent's application to be appointed guardian showed that the incompetent's estate was less than $1,000, but when petitioner was appointed substituted guardian his estate amounted to $2,455.07. Such a guardian is caretaker of the incompetent's estate with a duty to preserve it and is entitled to ask this court for instructions concerning the scope of his power (Cooper v. Wallace, 55 N.J. Eq. 192), the chancellor being the general guardian of all incompetent persons (Greenberg v. Greenberg, 99 N.J. Eq. 461; In re Rhodes,100 N.J. Eq. 370) and a guardian appointed under a statute is an agent of, controllable by and accountable to the chancellor. VanHorn v. Hann, 39 N.J. Law 207; In re Farrell, 51 N.J. Eq. 353.
Generally speaking, when any matter affecting the property of an incompetent is presented to the chancellor, he will act therein as appears for the best interest of his ward. Beside his inherent power to so act, the chancellor is specifically authorized by Comp. Stat. p. 2792 § 14j (a supplement to the act concerning idiots and lunatics) in cases where any power is vested in or the exercise of any power depends upon the consent of any person of unsound mind, to order and direct the guardian of the incompetent, if it appears expedient so to do, to exercise such power. The question here presented *Page 473 
is, can the interest of the respondent as beneficiary be terminated and is it expedient for the incompetent to terminate it and to substitute the incompetent's estate as beneficiary?
Respondent claims that the insured gave her the policies as a present shortly after marriage and that she paid some premiums thereon prior to his commitment to the state institution, but the evidence does not sustain her claim. She voluntarily surrendered the policies to the petitioner as her successor guardian, making no claim of ownership and even if the policies were a gift to her, the insured had not parted with all control over them because the gift was subject to his right to eliminate her as beneficiary without her consent and any premiums she paid came from a bank account in the joint names of the insured and herself, in which account the insured had deposited his own money. When it is sought to divest a beneficiary named in a policy of his interest as such, it is merely necessary to follow the procedure prescribed in the policy. Anderson v. BroadStreet National Bank, 90 N.J. Eq. 78; affirmed, 91 N.J. Eq. 331.
It is proposed here to follow the policy directions strictly, only instead of the incompetent alone exercising the right to make the change, it will also be exercised by his guardian acting for him under the chancellor's direction.
It is reasonable to believe that if the insured were competent he would terminate respondent's interest as beneficiary. She brought suit against him to have it adjudged that she never was his wife in law and the decree she obtained declared their marriage a nullity; she has ceased even to bear his name and she finally severed all ties with him when she resigned as his guardian. When this court is asked to affirm or reject the exercise by a guardian of a power vested in his lunatic ward, our court of errors and appeals has declared the rule to be "that the court will do that which it is reasonable to believe the lunatic himself would do if he had the capacity to act." Potter v.Berry, 53 N.J. Eq. 151. Beside believing it reasonable that the incompetent insured would desire to divest respondent of her interest under the policies, we have the act and the testimony of the incompetent. He *Page 474 
has been on parole from the state institution since August 31st, 1937, living with his sister and a brother and on or after that date he signed the request for change of beneficiary in the presence of three physicians who certified that he understood the nature, purpose and effect of the act he then performed. He appeared before me as a witness on the hearing herein. He has not been adjudged insane upon a commission in lunacy and even if he had, he would not necessarily be disqualified from testifying.Eckman v. Wood, 108 N.J. Law 105. After examination made by me for the purpose of testing the strength of his intellect, he testified upon direct and cross-examination that he desires to change the beneficiary under his policies from respondent to his estate.
Is it expedient for the incompetent that his estate be named as beneficiary in place of respondent? Both policies contain provision for payment of total and permanent disability benefits to the insured, under which he or his guardian has received $20 per month and I assume such payments will continue so long as the insured is incompetent. The policies also provide that premium payments shall be waived during the period of disability, so that the insured is receiving benefits under the policies and it costs his estate nothing at the present time to carry them. The insured executed no will while he was competent and the persons who would take the proceeds of the policies from his administrator (were they payable to his estate) in the event of his death before being restored to reason, would be his sister and three brothers, of whom petitioner is one. The insured testified he realized that fact and he said they are the persons most interested in him and who will see that he is properly cared for. But before the proceeds of the policies can come to the hands of his next of kin, there must be paid therefrom any debts which his guardian may incur in his care and maintenance, his burial expenses and physician's bills in his last illness have preferential claim. Moreover, if the beneficiary under the policies be the incompetent's estate instead of an individual, it will be much simpler to effect surrender of the policies for a cash value in case it should become necessary in the future to raise money *Page 475 
for the support of the incompetent. It seems clear therefore, that the change of beneficiary proposed will be for the benefit of the incompetent should he die before being restored to reason and if he should be discharged from the state institution as mentally cured, he may make such change of beneficiary as he may desire.
Respondent cites Kay v. Erickson 209 Wis. 147,244 N.W. Rep. 625, and In re Wainman, 200 N.Y. Supp. 893, as authority for her contention that the chancellor has no power to grant the guardian's petition, but the facts in those cases are quite different from the facts here present and I am unwilling to accept them as guides in arriving at a decision in the instant case. The cases of Brooklyn Trust Co. v. Dais, 122 N.J. Eq. 182; In re Reeves, 10 Del. Ch. 324; 92 Atl. Rep. 246; affirmed on appeal, 10 Del. Ch. 483; 94 Atl. Rep. 511, and Maclay v.Equitable, c., Society, 152 U.S. 499, support the conclusion I have reached that the petitioning guardian should be authorized to execute the necessary form for changing the beneficiary under the policies to the executors, administrators or assigns of the insured and to deliver the policies to Prudential Insurance Company for endorsement accordingly, and that Prudential Insurance Company should be directed to endorse such change on the policies and return them to the petitioner.