**UNITED STATES of America,**
**Plaintiff,**

v.

**Mrs. Hallie Stirling TIGHE et al.,**
**Defendants.**

**Civ. A. No. 3019.**

United States District Court
S. D. Mississippi,
Jackson Division.

May 18, 1964.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff.

Alfred N. Crisler of Crisler, Crisler & Bowling, W. E. Gore, Jr., B. Stirling Tighe of Tighe & Tighe, Jackson, Miss., for defendants.

SIDNEY C. MIZE, District Judge.

The United States of America on August 23, 1960 filed a complaint in interpleader against Mrs. Hallie Stirling Tighe, Mrs. Nola Chiles and Mrs. Bettie Roecker, claimants to the proceeds of a National Service Life Insurance Policy on the life of Samuel Carter Stirling, deceased. The action was brought by the plaintiff under the provisions of the World War Veterans Act of 1924 and the National Service Life Insurance Act of 1940 against the defendants above named, alleging that each of the defendants asserted a claim to the proceeds of a policy of insurance granted by the National Service Life Insurance Company to Samuel C. Stirling now deceased. Samuel C. Stirling, more frequently referred to in the pleadings and testimony was known as Carter Stirling, but entered the service under the name of Samuel C. Stirling. On April 1, 1942 he was granted a policy of insurance in the sum of $10,000 and on April 1, 1950 the insured was granted a renewal of the insurance, being the policy now in dispute. Samuel C. Stirling hereinafter will be referred to as Carter. He was the son of J. B. Stirling, referred to frequently as General. He formerly had been Attorney General of the State of Mississippi and was named as the original beneficiary in the insurance policy. General Stirling died on April 19, 1950 and on May 1, 1950 the insured, Carter Stirling, executed a change of beneficiary in favor of Mrs. Nola Chiles. She was not related to him, but was a friend and Carter Stirling had dated her off and on for several years. Carter Stirling had previously been married on March 12, 1930 to

Charla Vesta Culpepper and to this marriage was born one child, now Mrs. Bettie Hallie Stirling Roecker. About the year 1932 Mrs. Carter Stirling deserted Carter Stirling in Jackson, Mississippi and went to Honolulu and while there divorced Carter Stirling in 1936. The decree of divorce awarded the custody of the child, who was then some five or six years old. The decree of divorce did not award any alimony or any support or maintenance for the child.

The child, Mrs. Roecker, was never at any time named the beneficiary in the policy of insurance and prior to the trial of this lawsuit she had never seen her father but one time after she and her mother went to Honolulu. She returned to Mississippi when she was about sixteen years of age and spent a few hours with her father while in Jackson visiting some relatives. While there her father, Carter Stirling, took her to dinner at the home of Carter's sister, Mrs. Hallie Stirling Tighe. Up until the time of the divorce Carter Stirling kept in contact with his wife by correspondence from time to time and sent some presents and some money to the child. After the divorce Mrs. Stirling remarried and again was divorced from that husband and again was married to her present husband, with whom she is now living in California. Bettie Hallie Stirling married, becoming Mrs. Roecker, has lived in California since that time and has two children.

The three defendants named in the interpleader suit each filed an answer asserting a claim to the proceeds of this policy. Mrs. Hallie Stirling Tighe asserted a claim by virtue of the decree of the Chancery Court of Hinds County, Mississippi directing the guardian of Carter Stirling, N.C.M., Sebastian Moore, to change the beneficiary from Mrs. Nola Chiles to Mrs. Hallie Stirling Tighe.

On February 11, 1956 Carter Stirling was adjudged non compos mentis and William Sebastian Moore was appointed guardian, qualified as such and acted as guardian until after the death of the said Carter Stirling. Carter Stirling died

January 3, 1959. On May 28, 1956 William Sebastian Moore, the guardian of Carter Stirling, filed a petition with the Chancery Court of Hinds County, which had jurisdiction of the guardianship matter end of the guardian and of the ward, requesting authority to designate and change the beneficiary in the policy to Mrs. Hallie Stirling Tighe. The Veterans Administration was notified of the filing of the petition and filed its answer on June 1, 1956, neither admitting nor denying the right of the Court to authorize the guardian to change the beneficiary, but apprised the Court that Carter Stirling had a child, Bettie Hallie Stirling Roecker, living in California. On June 25, 1956 the guardian filed a supplemental petition setting out the fact of the said Carter Stirling having a child and praying for authority to designate Mrs. Tighe as beneficiary. On June 27, 1956 the Veterans Administration filed an answer to the supplemental petition, submitting the matter to the Court. On May 21, 1958 the guardian filed with the Chancery Court a petition requesting authority to institute proceedings to designate Mrs. Hallie Stirling Tighe as beneficiary of the estate of the ward, Carter Stirling. Pursuant to the petition of the guardian, the Chancery Court of Hinds County, Mississippi, entered a final decree on December 19, 1958, allowing the guardian to change the beneficiary on the NSLI policy from Mrs. Nola Chiles to Mrs Hallie Stirling Tighe, sister of the insured, finding that such change would be to the best interest of the ward. The guardian pursuant thereto executed such change and delivered the same to the Veterans Administration.

On January 3, 1959 the insured died, at a time when Mrs. Hallie Stirling Tighe had been designated as beneficiary on the NSLI policy by the guardian and with the approval, by order, of the Chancery Court of Hinds County.

Mrs. Hallie Stirling Tighe claims the proceeds of the NSLI policy in question by virtue of the change of beneficiary in her favor authorized by the final decree of the Chancery Court of Hinds County

and subsequently executed by the guardian of the insured.

Mrs. Nola Chiles claims such proceeds by virtue of her designation by the insured as beneficiary on May 1, 1950, subsequent to the death on April 19, 1950 of J. B. Stirling, the originally named beneficiary, and avers, contrary to the final decree of the Chancery Court dated December 19, 1958, that the insured was competent on and before May 1, 1950.

Mrs. Bettie Roecker claims such proceeds in her name and in the name of the insured's estate, charging that the insured was incompetent on May 1, 1950, after the death of J. B. Stirling, and, therefore, could not legally effect a designation of beneficiary of Mrs. Nola Chiles; hence the proceeds of the policy inured to the estate.

Claimants, Mrs. Chiles and Mrs. Roecker, have in further averments as to their claims charged that the decree of December 19, 1958 was procured by fraud and hence is voidable upon the collateral attack which they made upon such decree at the trial of this cause, but as a fact failed to prove any fraud.

The initial issue for consideration by the Court is whether the Chancery Court had jurisdiction and authority to enter its final decree authorizing a change of beneficiary on the NSLI policy in dispute. In regard to the consideration of this issue, it is significant that no offer of proof of fraud as against claimant, Mrs. Chiles, was made at the trial of this case, all of the charges of such fraud being levied in support of the claim of Mrs. Roecker; hence the issue of whether the Chancery Court of Hinds County had jurisdiction and authority to enter its decree in December, 1958 is dispositive of the respective claims of claimant, Mrs. Tighe, and claimant, Mrs. Chiles, and that issue may be properly decided purely as a matter of law. It is a matter of record that claimant, Mrs. Chiles, in an attempt to avoid a decision against her upon this issue, amended her pleadings so as to charge the same fraud as was averred by claimant, Mrs. Roecker; however, such issue again becomes simply a matter of law when it is viewed that such assertion in behalf of claimant, Mrs. Chiles, was without any substance whatever. Moreover, claimant, Mrs. Tighe, contends that the argument as laid in her behalf that the Chancery Court had full jurisdiction and authority to make the change of beneficiary on the NSLI policy in dispute, without notice to either of the other claimants, is dispositive of the entire case against both claimant Mrs. Roecker as well as claimant, Mrs. Chiles, when it is further viewed that the assertions of fraud which they make are upon collateral attack of the decree of the Chancery Court in the trial of this case in the United States District Court, and as a matter of law the said decree of the Chancery Court is not subject to the collateral attack made by said claimants.

General authority for change of beneficiary on National Service Life Insurance policies is found both in the National Service Life Insurance Act and the Veterans Administration Regulations applicable to such policies, as follows:

National Service Life Insurance Act, Title 38 U.S.C.A. § 717(a):

"The insured shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries."

Veterans Administration Regulation 3447 (8.47), admitted in evidence in the request for admissions of claimant, Mrs. Tighe, says:

"3447 (8.47) BENEFICIARY CHANGES.—The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary, to cancel the beneficiary designation or to change the beneficiary, but a change of beneficiary to a person not within the permitted class of beneficiaries set forth in V.A. Regulation 3446 shall not be effective as to insurance

which matured prior to August 1, 1946. A change of beneficiary to be effective must be made by notice in writing, signed by the insured, and forwarded to the V.A. by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practicable, such notices shall be given on blanks prescribed by the V.A. Upon receipt by the V.A. a valid designation or change of beneficiary shall be deemed to be effective as to the date of execution."

The law of Mississippi for authority of a guardian and the jurisdiction of a Chancery and Equity Court to act in regard to guardians and wards, we find that the Mississippi Constitution of 1890 bestows full jurisdiction upon the Chancery Courts of Mississippi unlike the limited authority which is given to probate courts of some states.

Mississippi Constitution of 1890, Section 159:

"The Chancery Court shall have full jurisdiction in the following matters and cases, viz.:

"(a) All matters in equity; * *

"(e) Cases of idiocy, lunacy, and persons of unsound mind; * * *"

A general statement of the law in this country regarding the power of a guardian to change the beneficiary on his incompetent ward's life insurance policy is found in the annotation styled Power of Guardian of Incompetent to Change Beneficiary in Ward's Life Insurance Policy, 21 A.L.R.2d 1911, where the authors of that work say:

"* * * In the few cases revealed by an exhaustive search of the point under annotation, it is stated generally that a guardian of an incompetent has no power, without court authority, to change the beneficiary in an insurance policy on the life of his ward. The holdings seem to be based, and rightly so, on the theory that the right to change a beneficiary in an insurance policy is a right personal to the insured,

and thus cannot be exercised by a guardian, unless a court decides that it is in the best interests of the ward. * * *"

Also, in that annotation there is cited the case of In Re Degnan, 122 N.J.Eq. 470, 194 A. 789 (1937), a decision of the Supreme Court of New Jersey, where Degnan, the Ward, had two life insurance policies on which his wife was designated beneficiary. The policies reserved the right to the insured to change the beneficiary. Degnan became incompetent and his wife was appointed as guardian for him. Subsequently, his wife obtained an annullment of their marriage and resigned as his guardian. Degnan's brother was then appointed guardian and as such guardian he sought to change the beneficiary on the ward's policy by court authority. The New Jersey Supreme Court allowed the change, stating as follows:

"* * * The question here presented is, Can the interest of the respondent as beneficiary be terminated and is it expedient for the incompetent to terminate it and to substitute the incompetent's estate as beneficiary? * * * It is proposed here to follow the policy directions strictly, only, instead of the incompetent alone exercising the right to make the change, it will also be exercised by his guardian acting for him under the Chancellor's direction."

See also In Re Reeves, 10 Del. Ch. 324, 92 A. 246 (1915); Maclay v. Equitable Life Assurance Society, 152 U.S. 499, 14 S.Ct. 678, 38 L.Ed. 528 (1894); Parry v. Parry, 316 Mass. 692, 56 N.E.2d 875 (1944).

The Massachusetts Court held in accordance with the same doctrine as expressed in the New Jersey case that upon authority of the court, the guardian of the incompetent could exercise the same reserved right. That Court said:

"The Probate Court had full jurisdiction under section 45 in a proper case (see Dolbeare v. Browser, 254 Mass. 57, 149 N.E. 626), to author-

ize or direct the guardian of the petitioner to exercise the option reserved (by the ward) to change the beneficiaries named in the contract."

A case applicable is found in the Federal jurisdiction in Murray v. U. S., 107 F.Supp. 290 (1950), U.S.D.C., E.D.Mich., N.D., affirmed, Murray v. U. S., 188 F.2d 362 (1951) C.A. 6th certiorari denied, Murray v. U. S., 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951):

In that case the insured veteran was adjudicated insane and a guardian appointed for him in the Probate Court for Genesee County, Michigan. The veteran's National Service Life Insurance Policy was in force with the beneficiary thereon as the insured's wife. He had made the designation prior to his adjudication as an insane person.

Subsequently, after his adjudication as an insane person, his wife divorced him. The guardian then obtained authority of the Probate Court to change the beneficiary on the policy.

The question squarely presented to the United States District Court for its decision was whether the divorced wife, as the originally named beneficiary on the policy at the time of the death of the insured, despite the change of beneficiary by his legal guardian under court order, was entitled to the proceeds of the policy.

The United States District Court considered the above arguments of the wife and as well V.A. Regulation 3447 and the National Service Life Insurance Act itself, providing in effect that the insured alone has the right to change a beneficiary and that that right is not directly conferred upon anybody else but the insured.

The Court also considered authority cited by the wife under her aforesaid stated arguments but found, in each case cited, where a guardian was held not to have the authority to make a change of beneficiary in behalf of his ward, he had acted in each instance without court authority.

The Court reached its decision after citing with approval language from the case of In Re Degnan, supra, where the New Jersey Supreme Court stated in part:

"[A] Probate Court ' * * * has inherent power to act as appears for best interest of incompetent person in matters affecting incompetent's property and has specific power to direct incompetent's guardian to exercise a power that is vested in incompetent or subject to incompetent's consent.' "

The Court in this Michigan case authorized the guardian there to make a change in the beneficiary on the policy but did not specifically designate the beneficiary itself, only stating that the persons who had borne the burdens of the incompetent ward's estate should be the ones to profit after his death. In that particular case, the election was made to designate the estate of the ward obviously because his heirs at law had been the persons who had borne the burdens of his estate as an incompetent.

"This court is not prohibited from following the law of the State of Michigan if that law does not seek to usurp powers of the federal government. Furthermore, there is no usurpation here. The National Service Life Insurance Act, 38 US CA, § 801 et seq, is deficient and such deficiency may be corrected by the state law. * * *

"We hold, therefore, that the beneficiary selected by the guardian shall receive the proceeds from the National Service Life Insurance policy of the veteran, because when the guardian acted by order of the Probate Court this had the same legal effect as though the insured himself had made the new designation."

On the issue of whether notice to other parties in the Chancery Court is required, viz., Mrs. Chiles and Mrs. Roecker, the Murray case held, (page 291 of 107 F.Supp.) that "notice of the intended change (of beneficiary) was not given or required under Michigan Probate law."

In the case at bar the same situation as in the Murray case, "no notice given

or required", because similarly there is no provision in Mississippi law for such notice.

See also Hardy v. Richards, 98 Miss. 625, 54 So. 76. Mullins' Estate v. Mullins' Estate, 125 So.2d 93 (1960—Miss.), in which the Hardy v. Richards (1911) case was cited with approval.

■ A collateral attack cannot be made on the decree of the Hinds County Chancery Court. The decree was entered on December 19, 1958. Mrs. Roecker and Mrs. Chiles learned of this decree immediately subsequent to January 3, 1959, when they made their respective claims to the proceeds of the NSLI policy in question. Despite this knowledge of the existence of the decree, neither of said claimants took any action whatever in said Chancery Court to challenge said decree either as to the jurisdiction and authority of the Chancery Court or as to the propriety of said decree.

■ The present interpleader suit was filed by the United States against all of the three claimants herein on August 23, 1960, nearly two years after said decree was entered. At that time the United States District Court assumed full jurisdiction of this case under the provisions of the National Service Life Insurance Act of 1940, as amended, Title 38 U.S.C.A. § 784. The case proceeded toward trial, and in the processing same numerous discovery proceedings were employed between claimant, Mrs. Tighe, and the other two claimants. On or about November 11, 1961, some three years after the rendition of said final decree, and after this case had been pending in the Federal Court for more than a year, claimants Mrs. Roecker and Mrs. Chiles, by their respective counsel, jointly filed in said Chancery Court a "Bill in the Nature of Bill of Review", which purported to make a "direct attack" on the decree of the Chancery Court. This was, of course, at a time when the Federal Court had full jurisdiction of all matters concerning the NSLI policy and proceedings concerning the deceased insured, Samuel Carter Stirling, to the exclusion of said

Chancery Court or any other State Court. Said bill in the Chancery Court nevertheless attempted to obtain the relief of setting aside the final decree of the Chancery Court on the basis of the same charges of fraud which had been previously averred in the Federal Court by way of "collateral attack" on said decree.

■ This bill in the nature of a bill of review must be dismissed because there was not any new evidence introduced in the trial of this case here in this court that would be sufficient to overthrow or set aside the decree that was rendered by the Chancery Court of Hinds County, Mississippi adjudicating Carter Stirling to be non compos mentis, but on the contrary, the testimony in this court shows that the Chancellor was correct in all of his judgments and decrees. The record before this court shows clearly that the Chancellor went into the question of lunacy or persons of unsound mind, and after having heard all the evidence, reached the conclusion that Carter Stirling was of unsound mind and that at the time the decree was rendered the Chancery Court had full jurisdiction of the matter.

■ The testimony in the present case shows that the Chancellor was correct and I so concluded in holding that he was non compos mentis and incapable of taking care of his own business affairs, and that a guardian should be appointed for him. This was done under the applicable provisions of the Mississippi law and the Chancellor was fully justified by the testimony produced before him at the hearing in directing the guardian to change the beneficiary from Mrs. Chiles to Mrs. Hallie Stirling Tighe, who was a sister and close to the said Carter Stirling. The record reflects and I so find that she was attentive to him, visited him regularly, took him out for rides, looked after his welfare, and during this period of time no one knew just how long he would live. The Chancellor was justified, as a matter of inference that if he lived at length the one who could be depended upon to care for him, attend to his wants, furnishing him companion-

ship and entertainment, was his sister, Mrs. Hallie Stirling Tighe.

 The record before this court is completely barren of any fraud perpetrated by Mrs. Tighe or her attorney upon the courts in procuring a change of beneficiary. The attorney for the guardian of Carter Stirling presented the matter to the Chancellor, produced evidence of the long habitual use of intoxicants by Carter Stirling until the time came when it affected his mind, and the Chancellor was justified in acting upon such testimony. The attorney for the guardian did nothing but what he had a right to do. He advised the court of every fact that was known to him and did not by his conduct mislead the court in any way whatsoever. Every act that he did was one permitted by law and the law is well settled that as long as one is acting within his rights as a matter of law his conduct cannot be termed fraudulent. I find as a fact that not only have the litigants asserting fraud failed to prove same, but on the contrary there was no fraud perpetrated.

As is shown by the authorities hereinbefore cited, it is not necessary under the law to have a beneficiary changed by the guardian to notify the designated beneficiary or any relatives of the insured. There is no vested right to the proceeds of an insurance policy by a named beneficiary until death matures the policy. The guardian was guilty of no fraud, as he acted under the direct order of the Chancellor to change the beneficiary to Mrs. Hallie Stirling Tighe. This was done and the Veterans Administration was notified of the change. While it did not accept the change, it did waive the acceptance by tendering the money into the Registry of the Court for the Court to determine under the law which one of the claimants was entitled to the proceeds.

I conclude as a matter of law that the action of the Chancellor in adjudicating the deceased Carter Stirling of unsound mind was correct and that his action was correct in ordering and directing the guardian to change the beneficiary from Mrs. Chiles to Mrs. Hallie Stirling Tighe, that she is entitled to the proceeds of the policy and that the Clerk of this court should be directed to pay to her the proceeds which were paid into the Registry of this Court.

I conclude as a matter of law that the bill in the nature of a review should be dismissed.

Orders may be drawn in accord herewith.