SELLERS, Estate of, In re: JOHNSON, Admr. etc., Plaintiff-Appellant, v. SADLER et al., Defendants-Appellees.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21365. Decided January 30, 1950.

Deibel, Elbrecht & Roberts, M. H. Dixon, Cleveland, for plaintiff-appellant.

E. M. Tyler, Cleveland, for defendant-appellees.

## OPINION

By HURD, J:

This is an appeal on questions of law from a judgment of the Probate Court of Cuyahoga County, allowing exceptions to the inventory and appraisal filed in the Estate of Susan Sellers, deceased, who died intestate July 8, 1948. The following named persons are her known next of kin: Carl M. Johnson, brother, aged 46 years; Emma Lou Johnson, niece, aged 20 years; Preston G. Johnson, nephew, aged 22 years; Cornelius Johnson, nephew, aged 36 years; Dorothy Morgan, niece, aged 32 years.

The matters in controversy here relate to events preceding her death. The record shows that decedent took out a policy of life insurance on her own life with The Phoenix Mutual Life Insurance Company hereinafter termed the "insurer" or "insurance company." By the terms of the policy, she reserved the full right to change the beneficiary at will without the consent of the beneficiary, the reservation in part reading as follows:

"If the insured has reserved the right to change the beneficiary hereunder and such fact is recorded on this policy, the insured, if of legal age, may whenever and as often as he likes, change any beneficiary designated herein by filing at the Home Office of the Company a written notice thereof **duly executed and accompanied by the policy for record of the charge thereon by the Company. * * *."** (Emphasis supplied.)

The policy was issued April 24, 1940, and first named Cornelius Johnson, her nephew, as the beneficiary. Thereafter on Oct. 6, 1945 the assured signed a change of beneficiary certificate naming Georgia Lindsey and Julia Sadler as the beneficiaries, the rider on the policy stating that they were

sisters of the insured, which was contrary to the fact, the exceptors being unrelated to the insured.

On December 14, 1947, the decedent suffered a stroke of apoplexy. Carl Johnson, her brother, who is the appellant herein, with other relatives assisting, took decedent to Lakeside Hospital, Cleveland, for care and treatment, where she remained as a patient for some time. On taking her to the hospital, decedent's brother explained to the Admittance Clerk at the desk "that she had some insurance to take care of her expenses."

Evidence in the record is undisputed to the effect that when the appellant took his sister to the hospital on the day of her sudden illness, he had a conversation with her after, as he testified, "she came out of the oxygen tent so she could talk and I could talk to her" in which he explained to her that he had to have money to take care of her while she was in the hospital and that her insurance would have to be changed. At that time she told him to change the policy "to her," that is to change the policy in such a way as to make her or her estate the beneficiary thereof.

It further appears that on the evening of the day on which she was admitted to the hospital, her brother, at her direction, went to the house where she had been living for the purpose of procuring the policy to accomplish a change of beneficiary. He asked Georgia Lindsey, one of the exceptors herein, where his sister's things were, referring particularly to the insurance policy. Mrs. Lindsey exhibited the policy to him with the remark that she and Mrs. Sadler were the beneficiaries of that insurance. She refused on demand to deliver the policy to him. She also had a bank book of the decedent evidencing a comparatively small account and likewise refused to surrender that to him.

The record shows that after he discussed the situation further with his sister, Johnson with her consent engaged an attorney for the express purpose of complying with her request to have her estate made beneficiary of the insurance policy in order to provide adequate security for hospital care and other expenses due to her illness in the event of her death. Thereafter, by and with the advice of counsel, Johnson made application to be appointed Guardian of the person and estate of his sister, which was granted by Probate Court in due course.

Whereupon, Johnson taking his Letters of Guardianship with him, procured the assistance of a policeman and repaired to the home of the exceptors. With the aid of the police officer he was able to recover from the exceptors the insurance

policy and the bank book. Thereupon Johnson again discussed with his sister the matter of change of beneficiary and she repeated her previous request that he cause a change in the designated beneficiaries of the policy so that her estate would be designated as sole beneficiary.

The evidence clearly shows that she gave these directions to her brother both before and after he was appointed Guardian. The appropriate forms were then procured from the insurance company and Johnson signed the request to change the beneficiary from the names of the exceptors to the executor, administrator or assignee of the insured. This request was forwarded to the insurance company and was duly honored by it and the policy was then made payable to "the executor, administrator or assignee of the insured" and endorsed accordingly.

As stated, the record shows that the first request of the insured to make the change of beneficiary was made the day the insured was removed to the hospital on December 14, 1947. This was some time before application was made for appointment of the guardian. The change in beneficiary was effected eventually and the appropriate rider attached January 20th, 1948.

Susan Sellers died in July, 1948, and thereafter the Probate Court on application, appointed the appellant Johnson as administrator of her estate. On making proof of death the insurance company paid him as administrator, the proceeds of the policy in the sum of $1912.37. The appellant as administrator, filed an inventory in which he showed this sum as part of the assets of the estate of the decedent. The exceptors, Georgia Lindsey and Julia Sadler, then filed their exceptions to the inventory, claiming to be entitled to the proceeds of the insurance policy. The insurance company was not at any time made a party to the proceedings.

The record under review consists of a transcript of the testimony of Carl Johnson, the administrator, who was called for cross-examination by the exceptors and Dorothy Morgan, a niece of decedent, who assisted her uncle, the day he took her aunt to the hospital. According to her testimony, the decedent had worked for a private family and at various times at least once a month "would come in and share a room with Julia Sadler" one of the exceptors.

The exceptors did not testify and the only other evidence consists of photostatic copies of the insurance policy and the written requests for change of beneficiary.

Upon hearing, the court sustained the exceptions. A motion for new trial having been made and overruled, an appeal was perfected to this court.

The administrator claims the proceeds of the insurance policy belong to Mrs. Sellers' estate, because the policy so provided at the death of the insured. The exceptors insist it belongs to them on the ground that the change of beneficiary was invalid.

The assignments of error are:

1. That the exceptors had no right to call Johnson as a witness as if under cross-examination over objection; allowing his testimony is assigned as error.

2. The change of beneficiary from Georgia Lindsey and Julia Sadler to the executor, administrator and assigns of the assured, was lawful and valid; the contrary holding is assigned as error.

3. The probate court had no jurisdiction to change the terms of the policy; the contrary holding is assigned as error.

As to the first ground of error, we think that a fiduciary is subject to examination in Probate Court in respect of his conduct as such fiduciary. It is claimed by appellant that it was error to compel the appellant to testify concerning facts occurring before the death of the decedent, it being claimed that the exceptors are parties adverse to Johnson and assignees of the decedent, under the provisions of §11495 GC. We believe this claim is untenable, particularly because the exceptors cannot be classified as assignees of the decedent.

We shall consider the two remaining assignments of error together.

It is our conclusion, from the evidence, that the change in beneficiary was accomplished by the guardian to the estate of the ward for the benefit of the ward and her estate, to provide adequate security for hospital care and other necessaries brought about by reason of her sudden illness. A representation to this effect was made to the admission clerk of the hospital at the time of her admittance. The evidence also shows that an attempt was made to procure the policy from the exceptors before the appointment of the guardian, without avail. By their refusal to deliver up the policy, upon demand, the exceptors thwarted the attempt of the insured to make a change in beneficiary in her own interest before the appointment of the guardian. The possession of the policy was necessary to effect the change of beneficiary by reason of the requirement of the insurance company, contained in the insurance contract above noted, **that the policy must be forwarded to them with the designation of change of beneficiary.**

The only reasonable inference that can be drawn from the evidence is that the application for the appointment of a guardian was for the purpose of procuring the policy to enable the ward to exercise her right to change the beneficiary for her own benefit. The parties may have been mistaken as to their means of accomplishing their purpose but certainly they were attempting to enforce a right in the insured's interest. Were it not for the wrongful conduct of the exceptors in refusing to deliver up the insurance policy upon demand made, the change of beneficiary would have been effected without the appointment of a guardian. The decedent at that time was sui juris although physically incapacitated, and she had a clear right to the possession of the policy and it should have been delivered to her brother, acting as her agent, upon demand.

Furthermore, the record shows conclusively that the proceeds of the policy are presently a part of the estate of the decedent, having been voluntarily delivered to the administrator by the insurance company upon proof of death. The exceptors in reality are strangers to the estate, being unrelated to the decedent and any claims asserted by them must rest upon the proposition that they were at one time named as beneficiaries under the policy in question. Their interest, insofar as this record is concerned, is not founded upon any relation to decedent by blood or affinity, or under any contractual claims. They had no pecuniary interest in the continuance of the life or expected benefit or advantage in continuance of the life of the decedent. Therefore, under well accepted principles they did not have an insurable interest.

A question arises as to what were the rights of the exceptors upon being named beneficiaries? At best their interest because of the reservation clause, was a contingent one, subject to defeasance at any time, by the mere will and act of the insured.

In 22 **O. Jur., Section 268, paragraph 409,** we note the following:

"The right of a beneficiary named in a contract of life insurance, which reserves to the insured the right to change the beneficiary at will, and which may be defeated by the insured by designation of another beneficiary, is contingent and does not become vested until the happening of the event which matures the policy. So, an express stipulation in the policy that it is 'written with the right of the insured to

change the beneficiary' creates an absolute right which can be exercised by the insured at any time."

The record shows that exceptors were not beneficiaries at the maturity of the policy and had not been such for a period of approximately six months prior thereto, consequently they cannot predicate their claim upon a vested interest.

It is well settled that:

"Where statutory, charter or contract provisions regulate the methods which must be pursued in order to effect a valid designation or change of beneficiary, they must, if known, or if the insured is charged with knowledge thereof, be at least substantially complied with, unless compliance is impossible, or is waived, or the insurer is estopped to set up non-compliance."

See, 22 O. Jur., Sec. 270, page 412. Section 274 states in part as follows:

"Even though the policy of insurance provides that the beneficiary cannot be changed, except by the surrender of the policy, yet, if the insured is unable to comply literally with the requirement because of physical disability * * * or because it (the policy) **has been wrongfully taken or withheld from him, the courts will, notwithstanding such surrender recognize an attempted change** as a valid one, where it appears that the insured has done all that he can to comply with the requirements, and the claim will be enforced since the insured cannot be compelled to perform impossibilities." See 22 O. Jur., page 412. (Emphasis supplied.)

In the case of **Atkinson v. Metropolitan Life Insurance Co., 114 Oh St 109,** certain well defined principles were established as the law of Ohio, in relation to change of beneficiary of life insurance policies, where the policy is written with the right of insured to change the beneficiary. It was there held that such right is absolute and may be exercised at any time and that the consent of the insurance company is not essential thereto, and that although the mode and manner of making the change is subject to reasonable regulations provided that such regulations are expressed in the policy, nevertheless, such provisions are for the benefit of such insurance company and may be waived by it. (See paragraphs 1, 2 and 4 of syllabus.)

It is also held that the notification in writing by the insured or his agent designating a different beneficiary, accompanied by the policy, is sufficient to effect the change and the new beneficiary therein designated is entitled to receive the proceeds.

Paragraph 3 of the syllabus reads as follows:

"Where the policy contains a provision concerning the change of beneficiary that the same can be made 'by filing written notice thereof at the home office of the company accompanied by the policy for suitable endorsement' any notification in writing by the insured, or his agent, designating a different beneficiary, which communication is accompanied by the policy, is sufficient to effect the change **and the new beneficiary therein designated is entitled to receive payments of the proceeds of the policy without further action on the part of the insurance company.**" (Emphasis supplied.)

This case remains unmodified and has been followed in numerous cases both in state and federal jurisdictions.

See particularly, **Glen v. Aetna Life Insurance Co. 73 Oh Ap 452** (March 11, 1943), and Sun Life Insurance Company v. Secoy, 72 Fed. Supp. 83 (June 19, 1947).

In Glen v. Aetna Life Insurance Company, it was held inter alia that where an insured reserved unconditionally the right to change beneficiary, additional provisions in a policy setting forth the manner of making the change are **solely** for **the benefit and protection of the insurance company.**

In the case of Sun Life Insurance Co. v. Secoy, it was held as follows:

"4. Under Ohio law, a change of beneficiary in life policies may be effected irrespective of fact that manner of effecting such a change set out in the policies is not complied with exactly.

5. Where strict compliance is unnecessary, a change of beneficiaries of life policies is effected under Ohio law, **if the evidence shows that the assured had definitely determined to change beneficiaries and that in accordance with that determination had done everything to best of his ability to effectuate the change.**" (Emphasis ours.)

In the instant case, the evidence is clear that before the appointment of the guardian, the insured had definitely determined to change beneficiaries and through her agent had done everything to the best of her ability to effectuate the change.

It was only after the insured was unable to secure the possession of the policy in order to effectuate the change that an application was made for the appointment of a guardian and this application was for the express purpose of accomplishing the change in beneficiary. The provisions of the policy in respect of the mode and manner of making the change was for the benefit and protection of the insurance company and not for the benefit and protection of the one time beneficiaries who are the exceptors herein.

The question before us is not whether the agency of the brother to effect the change in beneficiary in accord with the insured's wishes and request, was revoked by the appointment of a guardian. The question is,—was the wish of the insured accomplished, and were the circumstances such that what was done was for the best interests of the assured? Therefore it does not lie with the exceptors, who owed no legal duty of support to the assured, who had no insurable interest in the life of the assured and who had never expended any money to keep the policy in force, to complain of the method employed when the insurance company recognized the assured's request in whatever form it was received and in pursuance thereof honored the application for change of beneficiary and thereupon upon maturity of the policy, paid the proceeds to the estate upon proof of death by the administrator.

The decision of the Probate Court in this matter appears to rest solely upon the abstract principle of law that a guardian merely by virtue of his office is without authority to designate a change of beneficiary on a policy of life insurance upon the life of his ward. This is, generally speaking, a sound principle of law which is not challenged by this opinion. But facts and circumstances alter cases. The cases upon which the court seems to rely must be distinguished on the facts.

In sustaining the exceptions, the trial court relied principally on the cases of Kay et al v. Erickson, 209 Wis. 147, and In re Wainman's Estate, 200 N. Y. S. 893.

In re Wainman's Estate is not applicable because in that case the husband, at the instance of the wife, took out a life insurance policy naming the wife as beneficiary; the premiums being paid by the wife and the wife acquiring a vested interest in the policy. It was held that inasmuch as the husband could not surrender the policy without the wife's consent because of her vested interest, the committee of his person and estate when he became incompetent, could not surrender the policy for the purpose of paying his debts and for his support.

In the case of Kay v. Erickson, the named beneficiary predeceased the insured and a contest developed as to whether

the proceeds of the policy would go to the next of kin or to the estate of the assured upon an attempted designation by the guardian. It was held that the insurance belonged to the next of kin. The court held that the guardian could "undoubtedly surrender the policy to his ward upon the payment of the cash surrender value thereof, for the purpose of providing necessary funds for the purpose of support and maintenance of his ward." However, on the basis of a bylaw of the Catholic Knights of Wisconsin, the insurers, which read as follows:

"If no person is designated as beneficiary in the certificate, or if the person or persons so designated have predeceased the member, such sum shall be paid to the person or persons to whom the same shall be given and bequeathed in the last will and testament of the member and to the person or persons who are his heirs under the laws of the state of Wisconsin, if he shall die intestate,"

the court held that the heirs at law were clearly entitled to the proceeds of the certificate and that an attempted designation of the estate by the guardian contrary thereto was invalid; an entirely different factual situation from that here presented.

The case of In re Degnan (1937) 122 N. J. Eq. 470, decided by the New Jersey Chancery Court while not directly so, is more nearly in point. In that case after an adjudication of incompetency, the guardian and the ward signed an application for change of beneficiary from the former wife of the incompetent. The insurance company refused to honor the change of beneficiary on the ground that neither the incompetent nor the guardian could validly effectuate such a change in beneficiary. In that case the policies of insurance requesting the insurer to endorse the change of beneficiary to the executors, administrators or assigns of the insured with such applications were delivered to the insurer. The insurance company while declining to recognize the guardian's application for change, agreed to make the change providing the former named beneficiary consented. This she refused to do. Whereupon the substituted guardian presented his petition to the Chancellor alleging the essential facts and praying an order authorizing him to execute such papers to effect the change of beneficiary desired and directing that upon filing such papers with the insurance company that the insurance company endorse such change on the policies. The court directed the insurance company to endorse the change on

the policies and to return them to the petitioner, stating that the change of beneficiary proposed "will be for the benefit of the incompetent should he die before being restored to reason and if he should be discharged from the state institution as mentally cured he may make such change of beneficiary as he may desire."

It is interesting to note that the Chancellor in arriving at his conclusion considered the cases of Kay v. Erickson, and In re Wainman's Estate, in the following language:

"Respondent cites Kay v. Erickson, 209 Wis. 147, 244 N. W. Rep. 625, and In re Wainman, 200 N. Y. Supp. 893, as authority for her contention that the Chancellor has no power to grant the guardian's petition, but the facts in those cases are quite different from the facts here present, and I am unwilling to accept them as guides in arriving at a decision in the instant case. The cases of Brooklyn Trust Co. v. Dais, 122 New Jersey Eq. 182; In re Reeves, 10 Del. Ch. 324; 92 Atl. Rep. 246; affirmed on appeal, 10 Del Ch. 483;; 84 Atl. Rep. 511 and Maclay v. Equitable etc. Soc. 152 U. S. 499 support the conclusion I have reached that the petitioning guardian should be authorized to execute the necessary form for changing the beneficiary under the policies to the executors, administrators or assigns of the assured * * *."

Another proposition raised by the assignments of error was the question of determining the title to the proceeds of the insurance policy upon exceptions to the inventory. The record is clear that appellant objected to a hearing by way of exceptions to the inventory on the ground that this was an insurance matter and that the evidence shows that the policy was payable to decedent's estate and further that the proceeds thereof had been paid to and were at the time of the hearing a part of the estate; that the insurance company was not a party to the proceedings and that in order to change the terms of the policy some sort of reformation order would have to be made and in order to do that the insurance company would necessarily have to be made a party.

In the case of Estate of Bruce B. Brady, decided July 11, 1941 by the Probate Court of Cuyahoga County, Brewer, J., in a well reasoned opinion, concluded with these words:

"This court should not and will not entertain jurisdiction on exceptions to an inventory to determine the title to property in this estate."

At page 376 of the opinion we find the following:

"However, there seems to be a definite line of demarcation between the types of cases the Probate Court should entertain and those in which the exceptors should seek other remedies. This distinction is found in 23 Corpus Juris Sec. 381, 1163:

'The Probate Court has jurisdiction in proceedings for an inventory, to determine whether property belongs prima facie to the estate, so that it should be included in the inventory, but this jurisdiction does not extend to a determination of the ultimate question of ownership of property as between decedent's estate and an adverse claimant.' " (Citing numerous authorities from many jurisdictions.)

The court also refers to the case of the **Estate of Brunskill, 63 Oh Ap 529,** where the court states at page 532:

"We are of the opinion that under the circumstances disclosed by this record, the probate court was without jurisdiction to pass upon the title to the real and personal property herein involved in the proceedings on exceptions to the inventory of the decedent's estate. We indulge in no speculation as to whether, under some circumstances, the Probate Court might have jurisdiction to pass upon questions of title upon exceptions to inventories."

Without further discussing the Brady case, we are of the opinion that the principle enunciated in that case should have been followed in this case, and that it was error to order the administrator to correct and amend his inventory and appraisal by excluding therefrom the cash proceeds of the insurance policy in question, and that any rights which the exceptors claim to have must be adjudicated in some manner other than by way of exceptions to the inventory.

For the reasons stated, the judgment of the Probate Court is reversed and cause remanded with instructions to overrule the exceptions to the inventory. Exceptions noted. Order see journal.

SKEEL, PJ, McNAMEE, J, concur.