In the Matter of the Estate and Guardianship of
    HELEN HILTON, incompetent, WEALTHIA H.
    LAYTEN,

*Guardian and Appellant,*

vs.

ODELL-ARNEY RANCH CORPORATION,
    *Respondent.*

(No. 2617; January 19th, 1954; 265 Pac. (2d) 747).

392

For the appellant the cause was submitted upon the brief and also oral argument of H. Glenn Kinsley and Robert E. Holstedt, both of Sheridan, Wyoming.

For the respondent the cause was submitted upon the brief and also oral argument of Henry A. Burgess of Sheridan, Wyoming.

## OPINION

HARNSBERGER, Justice.

This matter is here by the direct appeal of the Guardian and the Guardian Ad Litem of Helen Hilton, an incompetent, from an order confirming the sale of the ward's property which included certain real estate known as the "Home Ranch" where the ward is living and which had been her home for many years.

The record discloses that the Guardian had petitioned the court for its order authorizing the sale of the real and personal property belonging to the ward, setting forth that there was no cash on hand with which to pay for the medical care or hospitalization required for the ward or for the cost of operating the ranch property which constituted a part of the wards estate; that the income of the estate was insufficient to maintain the ward and that it was necessary and in the best interests of the ward that the property, or so much thereof as was necessary, be sold, and the proceeds put out at interest or invested in some productive securities. Attached to the petition was a schedule of the real properties of the ward, the first unit consisting of some 181 acres of land, the second of a small tract, the acreage of which was not shown, the third, a tract of 160 acres of land known as the Home Ranch, the fourth,

of a larger tract of 940.08 acres of land, and the fifth, of a lot in the town of Sheridan. There were also listed personal properties consisting of a one-half interest in some 180 head of cattle, 300 sheep and certain farm machinery.

Seemingly the usual and proper preliminary notices were given, orders made and proceedings had to properly authorize the sale. A guardian ad litem was appointed who filed an answer to the petition for the sale of the ward's properties in which he demanded that strict proof be required showing the necessity for such sale and that the sale would be in the ward's best interests and, further requesting, that in making any such sales it be determined that the amount offered or to be paid as the purchase price of the properties, was fair and adequate and that a greater sum could not be obtained. Accordingly on March 20, 1953, an order of sale was made and entered, wherein, in addition to other things, the court affirmatively found that "after full examination, it appears necessary and for the benefit and best interest of the ward that her real estate and personal property should be sold," and "that all things have been done as required by law to authorize this Court to make and enter herein this Order for the sale of said real estate and personal property of said ward." No appeal was taken from this order. Thereupon, the guardian caused the properties of the ward to be appraised and published notice of call for sealed bids, expressly reserving the right to reject any and all bids. On April 4, 1953, the time and place fixed in the notice for receiving bids, the guardian permitted the bidders to revise and change their bids and, thereafter on April 6, 1953, the guardian prepared and filed her "Report and Return of Sale", the portions of which deemed to be of importance in this appeal, reading as follows:

"That at the time and place specified in said Notice of Call For Sealed Bids a public hearing was held at the offices of the said H. Glenn Kinsley and all bidders were present in person or represented by counsel and the following bids were received:

&ast;  &ast;  &ast;

"6. O'Dell-Arney Ranch Corporation of Dayton, Wyoming, bid on Unit 3, being the Home Ranch property consisting of 181 acres, more or less, Township 57 North, Range 86 West of the Sixth Principal Meridian in Sheridan County, Wyoming, together with a small tract of land described in connection therewith in the Call For Bids, the sum of $30,151.00 with the further statement that the bidder will allow Mrs. Hilton to remain in the residence for an agreed length of time, or bidder will allow her to retain title to residence if a price adjustment therefor may be made. Said O'Dell-Arney Ranch Corporation bid on Unit 4 for the cattle and Assignment of Mountain Permit the sum of $30,-151.00. The said O'Dell-Arney Ranch Corporation bid on Unit 5 for the sheep the sum of $300.00 and bid on the farm machinery the sum of $4,000.00. The bid on the farm machinery and the sheep was made contingent upon being the successful bidder on Units 3 and 4. Said bid contained the further alternate bid: 'I hereby bid $35,151.00 on Unit 3 with Mountain Permit for 180 head of cattle (without cattle) and restate and reaffirm willingness to allow Mrs. Hilton to retain possession of residence for a reasonable period of time or to retain title to said residence on a price adjustment being made. If desired, bidder will take a one-year lease on Units 1 and 2.

&ast;  &ast;  &ast;

"That the said Helen Hilton owns an undivided one-half "interest only in the personal property upon which said bids were received, but owns the full title to the real estate described in said bids.

&ast;  &ast;  &ast;

"This Guardian has been advised by the said O'Dell-Arney Ranch Corporation that said corporation will take the sheep at $300.00 in any event, and this Guard-

ian has accepted said bid as the highest and best bid therefor and said sale should now be confirmed.

"Said O'Dell-Arney Corporation has also offered to purchase the home property for $30,151.00 and to take the farm machinery at $4,000.00 and to permit Helen Hilton to remain in the house and have the use thereof and a garden spot therewith for a period of one year without rental and the use of the house thereafter at such rental as the Court may approve, *which arrangement seems to be desirable and should be approved and the sale confirmed.* (emphasis supplied).

\*    \*    \*

"That as regards the bids submitted on Unit 4, same being for the cattle and Assignment of Mountain Permit, this Guardian having conferred with her sister, Mabel Hilton, who with the undersigned Wealthia H. Layten, own jointly an undivided one-half of the cattle, consider that the cattle should be sold to R. H. Lomax who, since the receipt of the sealed bids, has offered to meet the bid of Chas. Kane, Jr., in the amount of $38,000.00. As a further reason for accepting the Lomax bid, this Guardian reports that the said R. H. Lomax has been assisting this Guardian in the feeding and care of said cattle without cost to the Guardianship and being a close neighbor has rendered great aid and assistance to this Guardian in looking after the Guardianship Estate and will continue to do so. *Furthermore, investigation has been made "respecting the matter of farming the home ranch if the same is not sold, and it is not certain that the same will be sold at this time.* If the ranch is retained and must be farmed and looked after for the ensuing season, said R. H. Lomax has indicated that if he is a successful bidder for the cattle that he will take a Lease of the property and farm the place for the ensuing year. *In view of all of the circumstances, it seems to be in the best interests of the Guardianship Estate that the bid of the said R. H. Lomax be accepted and the cattle sold to him and the Mountain Permit assigned in connection with said sale.* (emphasis supplied).

\*    \*    \*

"WHEREFORE, this Guardian prays * * *

"That hearing be had before this Court upon this Return of Sale of Real Estate on Friday, April 10, 1953 at the hour of 2:00 o'clock P.M. or as such later date as the Court may determine, and that this Court thereupon make such order as may be required respecting confirmation of sale of real estate.

"That the Court Now confirm the sale to O'Dell-Arney Ranch Corporation of the sheep for the sum of $300.00.'

There next appears in the record, an "Order Confirming Sale Of Personal Property", filed April 7, 1953, wherein the sale to R. H. Lomax of Unit 4, being the cattle and assignment of the Mountain Permit, was confirmed "for the consideration of $38,000.00, plus personal services to be performed and services that have been performed by said Lomax for the Guardianship Estate", it being noted that the Guardianship was entitled to but one-half of the consideration, and the sale of the sheep to O'Dell-Arney Ranch Corporation was also confirmed. On April 10, 1953, there was filed a reinventory and reappraisement of properties not concerned in this appeal, then on April 13, 1953, appears an "Order Confirming Sale of Real Estate" in which the sale of real estate Units 1 and 2 were confirmed.

The next instrument in the record was filed April 16, 1953, and is captioned "Motion For Reconsideration Of Guardian's Report And Return Of Sale". This is signed by and has attached to it the "Guardian Ad Litem's Affidavit".

This motion relates that the guardian ad litem has reviewed all of the proceedings in the guardianship matter and "finds no proof or allegation that it will be for the best interest of said Helen Hilton, incompetent, that the home ranch property designated as Unit No. 3 * * * should be sold"; that by the sale of other prop-

erties there was sufficient money "to care for and preserve the above estate of Helen Hilton, incompetent, without the sale of said home ranch property, Unit No. 3 and that, therefore, no valid reason now exists for the sale of said Unit No. 3, home ranch property, and that the sale thereof is not now necessary"; and "That upon a reconsideration of the Guardian's Report and Return of Sale the Court should require strict proof and determination that the sale is necessary and in the best interests of said incompetent person and other persons interested therein and should take evidence of all the facts and circumstances relating thereto." The attached affidavit of the Guardian Ad Litem merely reiterates upon his oath what the motion states.

On the same day April 16, 1953, the guardian also filed her motion for the reconsideration of her report and return of sale, in which it is stated *that the guardian was not given opportunity to present witnesses in relation to the report and return of sale;* that the guardian desires to testify and produce witnesses in relation to the report and return; that the guardian did not accept the bid of the O'Dell-Arney Ranch Corporation for Unit 3, the Home Ranch property because her report and return states, among other things, " 'it is not certain that the same will be sold at this time' "; that the guardian did not accept the bid of the O'Dell-Arney Ranch Corporation for the farm machinery; that the bid of the O'Dell-Arney Ranch Corporation was a qualified bid; that *"the Court in announcing that the sale of said property would be confirmed,* was not fully advised of all the facts and circumstances, and in the best interests of the said ward the Court should reconsider the Guardian's Report and Return of Sale and take evidence of all of the facts and circumstances relating thereto"; and that the home ranch should be retained and the farm machinery be resold.

The guardian's *affidavit* attached to her motion stated the O'Dell-Arney Ranch Corporation's bid for the home ranch was the only bid made for that property alone; that other bidders knew that the home ranch might not be sold; that the bid on the farm machinery was contingent upon being successful in other bids; that the bid of O'Dell-Arney Ranch Corporation for the home ranch was never accepted by her and that she declines to accept the same because such sale is unnecessary and not in the best interests of the ward; that in her opinion the farm machinery should bring more money; that the ward could not be moved from the home place on account of her health but should be permitted to continue to live there with the guardian and sister of the guardian; that the court was not fully advised and that a hearing should be had upon the Guardian's Report and Return of Sale and evidence taken and *"that the announced opinion of the Court that the sale should be confirmed to the O'Dell-Arney Ranch Corporation for the Unit 3, Home Ranch Property, and for the farm machinery,* should be set aside and an Order of the Court made and entered herein permitting the ward to retain the home ranch property and authorizing the Guardian to sell the farm machinery at public auction." (emphasis supplied). It should be noted that the affidavit fails to support the allegation of the motion "That no opportunity was given to this Guardian to present witnesses in relation to the said Report and Return of Sale * * * ".

There was also attached to the guardian's motion, the affidavit of the guardian's attorney, the substance of which is that before the bids were opened he announced that the guardian reserved the right to reject any and all bids; that the only bid on the farm machinery and on the home ranch, Unit No. 3, was that of O'Dell-Arney Ranch Corporation, a copy of which was attach-

ed to the affidavit; that before the bids were received *the guardian was uncertain whether she would sell or need to sell* the home ranch, Unit No. 3; that there were other prospective bidders who would have bid on said home ranch had they known that the home ranch would be sold, naming one such person, and that the guardian did not accept the bid of the O'Dell-Arney Ranch Corporation upon the home ranch, Unit No. 3, nor did she accept its bid on the farm machinery as a separate unit. This affidavit also fails to support motion's statement "That no opportunity was given to this Guardian to present witnesses in relation to the said Report and Return of Sale * * * ".

On April 21, 1953, there was filed the counter-affidavit of the vice-president and manager of the O'Dell-Arney Ranch Corporation the high lights of which are, that at the bidding on April 4, 1953, the Corporation waived the condition it had originally attached to its bid for the farm machinery and sheep and that such waiver was known and consented to by the guardian; that the affiant was present at the hearing on April 10, 1953 *and heard the guardian make her report and return of sale; and that the court heard the guardian, the brother and the two daughters of the ward, in regard to the sale of the properties.*

On the same day, April 21, 1953, there was also filed the counter-affidavit of the attorney for the ranch corporation, wherein it is stated in substance, that on April 4, 1953 the day set for opening the bids, his client's bid for Unit 3 was the high bid and that no higher bid was made; that his client's bid for the sheep and farm machinery was likewise the high bid for those items and that to accommodate the guardian, and with her consent, his client waived the condition originally attached to its bid for those items; that the sheep had been delivered to the corporation and paid for by it, and that

his client was ready, able and willing to pay for the farm machinery. The affiant further stated that at the hearing the court allowed each of the persons present to be heard and that no request was made to call other witnesses or to have the testimony taken by a court reporter.

On that same day, April 21, 1953, the criticized "Order Confirming Sale of Real Estate" was filed.

Omitting the formal portions, this order reads as follows:

"This matter came on regularly for hearing before this Court upon the 10th day of April, 1953 upon return of sale of real estate, heretofore filed herein by Wealthia H. Layten, Guardian of the estate and person of Helen Hilton, incompetent, pursuant to Order for Sale of Real Estate and Personal Property entered herein on March 19, 1953.

"Wealthia H. Layten, said Guardian, appeared in person and by her attorney H. Glenn Kinsley, Grace Erlanson, Mabel Hilton appearing personally, both of said persons being daughters of the ward, and George Barker appearing personally, he being a brother of said ward, the O'Dell-Ranch Corporation appearing by its manager Harold Arney and its attorney Henry A. Burgess, attorney at law.

"The Court having considered said report and return of sale and having considered the allegations thereof, and having heard the above named persons, and being duly and fully advised in the premises finds:

## I.

"That pursuant to an Order authorizing sale of real estate and personal property entered herein as aforesaid, this "Guardian published notice of call for bids and notified all prospective bidders for the real estate and other property of the Guardianship Estate of the proposed sale thereof. That bids upon said real and personal property were received and opened at the office of H. Glenn Kinsley, attorney at law in the First

National Bank Building at Sheridan, Wyoming at the appointed time of 10:00 o'clock A.M. on the 4th day of April, 1953. That the Guardian has accepted the bid of the O'Dell-Ranch Corporation for the home property, hereinafter more particularly described, $30,151.00 and for the farm machinery at $4,000.00, which bid was also upon the condition that Helen Hilton could remain in the house upon said premises and for the use thereof and a garden spot therewith for a period of one year without rental and the use of the house thereafter at such rental as the Court may approve and that said arrangement seemed desirable and should be approved by the Court and the sale confirmed.

## II.

"That the Court has examined the return of the Guardian and the witnesses in relation to the same and that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, to-wit: said home place having been appraised for the sum of $28,000.00 and the bid thereon being the sum of $30,151.00, and said farm machinery having been appraised for a total sum of $3,637.00 and the sum bid thereon being $4,000.00, and that a greater sum cannot be obtained for either of said items.

## III.

"That it is necessary and to the best interest of the estate of said Helen Hilton, incompetent, that said real estate be sold and the sale thereof by said Guardian should be approved and confirmed and said Guardian authorized and "directed to make, execute and deliver to the purchaser a good and sufficient Guardian's Deed and bill of sale for the property sold.

"IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED by the Court that the sale of the following described real estate, to-wit:

(Description omitted)

made by said Wealthia H. Layten as Guardian of the estate and person of Helen Hilton, incompetent, to the O'Dell-Arney Ranch Corporation be, and the same is,

hereby approved, ratified and confirmed, and that said Guardian is hereby authorized, empowered, directed and ordered to make, execute and deliver to the O'Dell-Arney Ranch Corporation a good and sufficient Guardian's Deed therefor upon payment to her of the sum of $30,151.00.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the sale of the following described farm machinery, to-wit:

(Description omitted)

made by Wealthia H. Layten as Guardian of the estate and person of said Helen Hilton, incompetent, to the O'Dell-Arney Ranch Corporation be, and the same is, hereby approved, ratified and confirmed and that said Guardian be, and she is, hereby authorized, empowered, directed and ordered to make, execute and deliver to said O'Dell-Arney Ranch Corporation good and sufficient bills of sale for said machinery upon payment to her of the sum of $4,000.00.

"To both of which Orders the said Guardian duly excepts, which exception is by the Court hereby allowed.

"Done in open Court this *21st* day of April, 1953.

On April 22, 1953, there was filed the court's "Order Overruling Motion Of Guardian And Guardian Ad Litem", and on April 23, 1953 the guardian filed her "Motion For Order Setting Aside Order Confirming Sale Of Real Estate". This motion asserts in so many words that the findings of the court that the guardian had accepted the respondent's bid, and that the court had examined the return of the guardian and the witnesses in relation to the same, contained in its order of April 21, 1953, were untrue; that the order made no reservation of one-half of the mineral rights and directs the guardian to execute a bill of sale for the farm machinery in which the guardian (the ward) owns only an undivided one-half interest, which is said to be a taking of property without due process of law and in violation of both the state and federal constitutions.

In support of this motion there is attached the affidavit of the attorney for the guardian purporting to quote from the disputed order of confirmation the following finding, which the affiant says is erroneous, to-wit:

" 'That the Guardian has made report to this Court respecting the bidding and has reported that she has accepted the bid of O'Dell-Ranch Corporation for the home property hereinafter more particularly described, *$31,150.00* and for farm machinery at $4,000.00.' "

The above fails to correctly quote from the order of confirmation, the actual finding being:

" * * * That the Guardian has accepted the bid of the O'Dell Ranch Corporation for the home property, hereinafter more particularly described, $30,151.00 and for the farm machinery at $4,000.00 * * * "

While this difference is seemingly slight, it is of some importance because as will be seen, one of the principal challenges presented by this appeal is the question of whether or not the court was justified in making such a finding. The affiant further says that no witnesses were sworn or examined relating to the return of sale, but that after the Judge had indicated that he was going to confirm the sale of Unit No. 3 to the O'Dell-Arney Ranch Corporation, the uncle (undoubtedly meaning brother) of the ward and the guardian protested, but no sworn testimony was taken from any witness regarding the matter. The affidavit also states "That all bidders were advised that one-half of all the oil, gas and mineral rights in the real estate would be reserved to the seller in case bids were accepted and the property sold. * * * ", but that the order of confirmation made no such reservation; and that the personal property described in the order of confirmation was jointly owned by the ward and her two daughters.

Without waiting for a ruling on this motion, the appellant on April 28, 1953, filed "Notice of Appeal" from

the order of confirmation in question, and thereafter on April 29, 1953, the counter-affidavit of the attorney for the respondent was filed. This affiant sets forth affirmatively that the guardian did accept the bid of the O'Dell-Arney Ranch Corporation for the home property; that this corporation was the high bidder; that it was agreed at the time bids were received that the guardian would report to the court the results of the bidding, and that the high bidders would be awarded the property upon which they had bid; that at the hearing on the return and report of sale of the guardian, no demand was made by any person present for the swearing of witnesses or for the reduction to writing of the examination of witnesses in regard to said return and report of sale; that there has been no challenge to the validity of the sale to his client of the home ranch property upon the grounds that the sale was not fairly made and properly conducted, that the amount bid was less than the appraised value, that a greater sum for said property could be obtained, or that such a sale was not in the best interest of the ward; that the only objection voiced at the hearing was that the guardian and her sister desired personally to reside on the home place and not to sell the same; that neither the guardian nor her sister filed written objections to the confirmation of said sale; that neither the guardian nor the guardian ad litem produced witnesses in support of their objection to confirmation upon the day of the hearing upon the return of sale; that the guardian ad litem did not file written objection to such confirmation nor did he appear at the hearing; and that in neither the petition for the sale of the home property, the answer of the guardian ad litem, the order authorizing the sale of the home property, the return and report of sale of the guardian, is any reference made that the sale of the home ranch property was to be subject to a reservation of mineral and oil rights.

At this point, it might be well to comment with respect to respondent attorney's statement "that the only objection voiced at the hearing was that the guardian and her sister desired personally to reside on the home place and not sell the same".

In The American Law of Guardianship, by Woerner, at page 454, the author says:

" * * * Hence, it is held, both in England and America, that the guardian of a person of unsound mind should, in the management of his estate, attend solely and entirely to the interests of the owner, without looking to the interest of those who, upon his death, may have eventual rights of succession. * * * "

So also is it true that in the management of a ward's estate the comfort or benefit to relatives during the life of the ward should be given no more consideration than is given to their interest in eventual succession to the estate upon the ward's death, unless such comfort or benefit is identified or interwoven with the welfare and interest of the ward.

On April 29, 1953, the court made and there was filed its order overruling and denying the motion to set aside the order confirming the sale of the home ranch property to the respondent herein.

Although the appellant sets forth her complaint in sixteen separately stated specifications of error, a fair summary of her position seems to be that the court's order of confirmation was erroneous because (1) only a conditional bid was made for the farm machinery; (2) the guardian did not accept the bid of the respondent for the home ranch, Unit 3; (3) witnesses were not sworn nor examined at the hearing on the return and report of the guardian on the sale of the ward's real estate and personal property with respect to the items confirmed as sold to the respondent; (4) the sale of the

home ranch, Unit 3, was not in the best interest of the ward; (5) although the validity of the proceedings preceding the hearing on confirmation of sale of real estate was not questioned, the court was without jurisdiction to confirm or make a sale and direct the conveyance of the ward's real estate (a) over the protest and objection of the guardian or (b) over the protest and objection of the guardian ad litem; (6) a portion of the mineral interest was not reserved from the sale of the real estate, and (7) the ward owned only a one-half interest in the personal property sold.

As is indicated in one of the respondent's counter-affidavits, the record does not disclose that anyone requested that the testimony or the proceedings at the hearing on the report and return of the guardian on the sale of the ward's properties and on the confirmation of the questioned sales, be reported, in order that a transcript of the same might be provided in the event of an appeal, yet we are now asked to reverse the lower court's determination of several disputed matters of fact. In the absence of such a transcript, it has seemed advisable to set forth at some length the contents of the pleadings, the affidavits attached to motions and the court's orders affected by this appeal, for it is solely from these that our conclusions must be drawn regarding the correctness of the court's findings of fact.

The laws of this state relating to the sale of properties of wards have remained substantially the same since their enactment in Chapter 70, Session Laws of Wyoming 1890-91, and they now appear partly in Article 4, Chapter 7, Wyoming Compiled Statutes, 1945, dealing with guardian and ward, and partly in Article 17, Chapter 6, Wyoming Compiled Statutes, 1945, dealing with probate of estates. Also Sections dealing with insane wards appear in Chapter 51, Wyoming Compiled Statutes, 1945. In consequence, refer-

ence to administrators and executors must be considered applicable to guardians and references to decedents be deemed to refer to wards.

In general summary, these statutes provide that when the income of a ward's estate becomes insufficient to maintain the ward and his family, or to educate him if a minor, or if it would be beneficial to the ward, the guardian must present to the court a verified petition setting forth the necessity or expediency of a sale. If such sale appears to be necessary, the court makes its order directing the next of kin and all persons interested in the estate of the ward to appear at a time and place fixed in the order, to show cause why the sale should not be made. Detailed provision is made to insure that notice of this order and of the hearing to be had is given to the next of kin of the ward and to all persons interested in the estate, and at the hearing full examination of the proofs and the allegations of the petitioner, the next of kin and of all other persons interested in the estate, is made. If then the court is satisfied that it is for the benefit of the ward that the properties or some part thereof be sold, the court or judge may grant an order for their sale, specifying, however, the causes or reasons why the sale is necessary or beneficial. Such an order of sale continues in force not more than one year, and it may be recalled at any time before sale by the court or judge. However, if the guardian neglects or refuses to make a sale under the order as directed, he may be compelled to sell, by order of the court or judge. The order of sale may direct that sales be made at public auction or at private sale if deemed for the benefit of the ward but, in either case, after making any sale of real estate the guardian must make a return of his proceedings to the court. Because of its importance in this case, the statute relating to this return is set forth here in full:

*Section 6-1728, Wyoming 'Compiled Statutes, 1945.*

"The executor or administrator, after making any sale of real estate, must make a return of his proceedings to the court, which must be filed in the office of the clerk, at any time subsequent to the sale and before the next term thereof. A hearing upon the return of the proceedings may be asked for in the return or by petition subsequently, and thereupon the court or judge must fix the day for hearing. Upon the hearing, the court must examine the return and witnesses in relation to the same, and if the proceedings were unfair, or the sum bid or received disproportionate to the value, and if it appears that a sum exceeding such bid at least ten per cent., exclusive of the expenses of a new sale, may be obtained, the court may vacate the sale and direct another to be had, of which notice must be given, and the sale in all respects conducted as if no previous sale had taken place; if an offer of ten per cent more in amount than that named in the return be made to the court in writing, by a responsible person, it is in the discretion of the court to accept such offer and confirm the sale to such person, or to order a new sale."

After the return of sale is filed any person interested in the ward's estate is authorized by Section 6-1729, Wyoming Compiled Statutes, 1945, to file written objections to the confirmation thereof, and the objector may be "heard" and may produce witnesses in support of such objections at the time the return is "heard".

In this case, written objections were not filed, nor were objections of any character made until *after* the court pronounced its judgment of confirmation. This is recognized and admitted in the affidavits of both the guardian and her attorney.

In consequence, it might appear that all that was offered or submitted up to the time the court announced its order of confirmation, was the report and return of sale filed by the guardian, if it were not that the sworn statements of respondent's manager and respondent's

attorney allege that the court did *hear* all persons present, and the order itself affirmatively finds that witnesses were examined.

It may be that the statement " * * * Upon the hearing, the court *must examine* the return and *witnesses* in relation to the same * * * " (emphasis supplied), found in Section 6-1728, Wyoming Compiled Statutes, 1945, should be construed as directory rather than mandatory, at least in the absence of witnesses being produced in support of written objections filed pursuant to the provisions of Section 6-1729, W.C.S., 1945. It is also doubtful if the legislature intended that after examining the return the court must seek out and itself produce witnesses to be examined, notwithstanding it appears from the record that the proceedings were fair; that the sum bidden was proportionate to value, and that a sum exceeding the bid reported by at least ten per cent exclusive of the expense of a new sale, could not be obtained, all as verified by the oath of the guardian. It seems more reasonable to conclude that the use of the mandatory word "must" in reference to the examination of witnesses, was made only in contemplation of witnesses being produced in support of any written objections filed.

However, it is unnecessary to, and we do not now so decide, for under the evidence before us, which we find favorable to the successful party and to the criticized order, the court's finding that witnesses were examined, is justified; and we so hold.

The assertion by the appellant that only a conditional bid was made for the farm machinery is contrary to the fact as set forth in the verified return of the guardian herself, when she stated "said O'Dell-Arney Corporation has also offered the purchase the home property for $30,151.00 *and to take the farm machinery at*

*$4,000.00* and to permit Helen Hilton to remain, etc.". There was no condition or qualification attached to the farm machinery bid thus mentioned and the affidavit of respondent's manager corroborated the return in this respect.

At the hearing the court had before it the guardian's "Report and Return of Sale" and, in relation thereto, heard from those present, according to the affidavits filed in behalf of respondents. Whether such hearing was informal, or consisted of testimony received under oath or as is set forth in the disputed order, was by examination of "witnesses", the lower court concluded that as a matter of fact the guardian had accepted the bid of the respondent, and so found. The evidence then before the court in the form of the verified "Report and Return of Sale", which included the guardian's own recommendation that the offer of the respondent for the properties in question "should be approved and the sale confirmed"—there being no question as to the adequacy of the consideration or of a higher offer, or of any unfairness or irregularity—was sufficient to support the finding.

On the motions to re-examine and reconsider the report and return of sale and to vacate the order of confirmation of sale, the position of the court was strengthened by the statements contained in the counter-affidavits filed and, if those sworn statements are taken to be true, they make the correctness of the decision indisputable.

Whether or not witnesses were sworn, we have no way of now ascertaining with certainty. The order finds that "witnesses" were examined. Lending to this finding the reasonable inference to which it is entitled, we might assume that the witnesses mentioned were

sworn, if indeed their being sworn was required, which point we need not now decide.

At the hearing on the return of sale, there was before the court no issue as to whether the sale of the home ranch, Unit 3, was in the best interest of the ward. That matter had become finally adjudicated when the time expired for taking an appeal from the Order of Sale, which was made and entered on March 20, 1953. While Section 7-414, Wyoming Compiled Statutes, 1945, provides that the order of sale may be recalled by the court or judge at any time before sale, certainly the guardian had not requested that this be done and no such action had been taken. Furthermore, the appellant has failed to give us any authority holding that confirmation of sales of real estate may be refused for reasons other than those set forth in Section 6-1728, Wyoming Compiled Statutes, 1945, or that the court may withhold confirmation of such sales, where the sale was legally made, fairly conducted, the bid proportionate to value and a greater bid unobtainable, as set forth in Section 6-1730, Wyoming Compiled Statutes, 1945, which reads:

"If it appears to the court that the sale was legally made and fairly conducted, and that the sum bid or received was not disproportionate to the value of the property sold, and that a greater sum, as above specified, can not be obtained, or if the increased bid mentioned in the second preceding section be made and accepted by the court, the court must make an order confirming the sale, and directing conveyances to be executed. * * * "

At a time when California's laws were substantially the same as ours with respect to the ordering, the making, and the confirming of sales of properties belonging to wards, its Supreme Court held In re Leonis, 138 Cal. 194, 71 P. 171, that before such a sale could be set aside or confirmation thereof refused, it must appear that a

sum exceeding the bidden sum by at least ten per cent could be obtained, and that either the proceedings were unfair or that the sum bid was disproportionate to the value of the property at the time of the bid.

The court also quoted with evident approval its former statement made In re Spriggs' Estate, 20 Cal. 121, 125, wherein the right to refuse confirmation of a sale previously ordered as necessary, was challenged on the ground that the necessity for such sale no longer existed, that " * * * provisions of the statute allowing objections to be made to the sale, and requiring for its efficacy of confirmation by the Court, are only intended to secure such an execution of the order of sale that a just and fair price may be obtained for the property for the benefit of the estate. * * * "

No reason has been advanced to us why this court should differ from the views of the California court hereinabove noted.

The appellant's contention that the court was without jurisdiction to confirm the sale over the protests of the guardian and the guardian ad litem is somewhat robbed of validity in this case by the fact that their objections were not made until after the court announced its decision. See Whitley v. Towle, 163 Miss. 418, 141 So. 571.

That the confirmation allegedly "shocked and surprised" the appellants, does not excuse them for their failure to properly and timely voice whatever objections they may have had to the confirmation and to support the same with testimony and evidence, *before* the court rendered its decision. Notwithstanding the guardian contends, and by her affidavit has sworn, that neither she nor her witnesses were permitted to testify at the hearing upon the return of sale, the available evidence other than her own statement and that of her

attorney, supports the finding of the court to the contrary. As shown in the guardian's own sworn statement and that of her attorney, she at least stood silently by until the court announced its decision and then for the first time—as far as the record shows—voiced objection to the court's confirming the very sales which, in her verified report and return of sale, she had previously advised the court were desirable and which she had said should be confirmed. In most proceedings this, of itself, would be sufficient to justify our refusing to consider the point, but in guardianship matters we are reluctant to by-pass any matter which might affect the fundamental rights and interests of wards and we will, therefore, briefly discuss the question of the court's right to confirm sales in the face of the opposition of a guardian or guardian ad litem. See 34 C.J.S. 584, § 607, Note 44.

It should be borne in mind that we have already determined that the order of sale had become final in this case; that such order had adjudicated the propriety and necessity for the sale, and we have approved of the court's finding that the guardian had accepted the respondent's bid for the properties in question.

There are also certain generally accepted principles or holdings apropos this matter which we think it desirable to note.

The sales here in question are judicial sales; 25 Am. Jur. 83, Sec. 134; 50 C.J.S. 578, Sec. 1 (c), wherein the guardian was acting as the arm or officer of the court, 25 Am. Jur. 41, Sec. 61, and was acting under the control of the court, 25 Am. Jur. 41, Sec. 60, so as to be a mere ministerial agent, 31 Am. Jur. 397, Sec. 2, while the court was in effect the superior guardian, 25 Am. Jur. 7, Sec. 2, and the vendor of the ward's property, 31 Am. Jur. 397, Sec. 2.

The paramount and controlling authority of the court in the selling of a ward's properties is further made manifest by the tenor of our statutes which expressly give courts the power to compel guardians to make sales which the court has ordered, to recall their own orders of sale, to give or withhold approval and confirmation within the limit of the discretion specified by statutes, see 39, C.J.S. 211, Sec. 131, Notes 66, 67, and in accordance with settled legal principles, 34 C.J.S. 587, Sec. 609, Notes 80, 81.

Furthermore, our statutes compel guardians to obtain from the court an order of sale before making the same, require guardians to make return of their proceedings in relation thereto, and make confirmation by the court necessary to validate any sale reported by the guardian.

Eversley on Domestic Relations, 3rd Edition, page 640, says:

"The power and jurisdiction of the court over guardians appointed by itself is clear and undisputed. A guardian appointed by the court is an officer of the court, and responsible to it, and is little more than a bailiff or servant. * * * When the court has assumed authority over the person or property of the infant ward, it acts throughout with all the anxious care and vigilance of a parent, and it allows neither the guardian nor any other person to do any act injurious to the rights or interests of the infant. * * * "

Also, Section 6-1728, W.C.S., 1945, provides that " * * * if an offer of ten per cent. more in amount than that named in the return be made *to the court* in writing, by a responsible person, it is in the discretion *of the court* to accept such offer and confirm the sale to such person, or to order a new sale.", (emphasis supplied) thus, expressly giving *the court* the right to receive and accept an offer and to confirm the sale under

these circumstances without reference to any acceptance on the part of the guardian.

The relationship of the court to the incompetent ward is the same as to the infant ward, for as is pointed out in the same work, Eversley on Domestic Relations, 3rd Ed. at page 634—"Guardians or curators are appointed not only to infants and minors, but also to idiots, lunatics, and persons of unsound mind, for the purpose of tending their persons and managing their estates; * * * ". In each case the guardian of the ward is appointed by the court, and in each case, the court's responsibility and duty to the ward is the same.

While the appellant has strenuously and even vehemently argued that the court is without the power to confirm a sale of the ward's property over the protest and objection of the guardian, in neither brief nor argument does counsel cite a single authority to support the contention. Notwithstanding, we have spent a great deal of time and effort searching texts and case books trying to find if this or any similar contention has previously been discussed or passed upon, but have had little success. The closest we have come was In re Reynold's Guardianship, 60 C.A. 2d 669, 141 P. 2d 498, a guardianship of the person of the ward. There a dispute arose when the court made an order regulating the guardian's control of the ward and the guardian appealed from the order contending the court had usurped and encroached upon his rights as guardian in relation to the ward. While the defense to the charge was based principally upon the California code, the appellate court said the applicable sections of the code were but a re-enactment of California's original guardianship laws, which, in turn, were but a statutory codification of the common law. The lower court's order was affirmed, thus giving recognition to the superior

authority of the court over the guardian in the face of a direct challenge.

And in Lord v. Hough, 37 Cal. 657, 663, where it was claimed that the authority of a testamentary guardian was superior to that of the court, it was stated: " * * * like all other guardians, he was but a trustee, and, for that reason, was, like them, subject to the general supervision and control of the Court of Chancery, even to the extent of removal, if found unfaithful to his trust. * * * ". The court then quoted with approval from Beaufort v. Betty, 1 P. Will. 702, where Lord Macclesfield said—" ' * * * a guardian appointed according to the statute had no more power than a guardian in socage; and as the Court could interpose where there was a guardianship in socage, so might it also do in case of a guardian by the statute, both being equally trustees; * * * ' ".

So we must hold that while it is the right and, in fact, the duty of guardians, as well as of guardians ad litem, to protest and make timely and proper objections in any proceeding affecting the welfare and interest of the ward, where such protest or objection is deemed to be in the ward's best interest, when the court has found at the hearing on the return of a sale made pursuant to order therefor, that the guardian had accepted the high bid for property, that the sale was legally made, fairly conducted, the bid proportionate to value and a greater bid unobtainable, it is within the sound discretion of the court whether or not to confirm such sale, even though the guardian and the guardian ad litem protest and object for the reason that the sale is then unnecessary and is not in the best interest of the ward. It should be understood without saying, that in the exercise of this discretion the court must not be arbitrary or capricious, but should be guided solely by considerations of the ward's best inter-

est. See Latterman v. Guardian Life Ins. Co. of America, 280 N.Y. 102, 19 N.E. 2d 978, 127 A.L.R. 450.

The suggestion that there is error because the order of confirmation fails to require that one-half of the mineral interest in the lands sold, be reserved, is completely without merit. In neither the guardian's petition for sale, the order of sale, the notices published, the form of bid furnished, or the guardian's return of sale is there any mention or direction that any part of the minerals be reserved from any of the real estate ordered to be sold.

Any sale of less than the whole of the ward's estate and interest in the lands was unauthorized and would fail of compliance with the court's order. It was the province of the court and not that of the guardian to determine whether all or only a part of the wards interest in her real estate should be sold. See 39 C.J.S. "Guardian and Ward" 218, 134, Notes 89, 90, 91 and 92.

There is likewise no merit in the contention that there was error in the court's confirming the sale of the machinery because the ward was the owner of only a one-half interest therein. It is elementary that an attempted sale, a sale or a confirmation of sale by a guardian or a court in a guardianship proceeding of property or interest which did not belong to the ward and which was not therefore within the jurisdiction of the court, would be a futile thing and transfers no title.

All that can be sold is the interest which the ward owns. 25 Am. Jur. "Guardian and Ward" 85, Sec. 138.

The record in this case leaves no doubt whatever that the purchaser, the guardian, the guardian ad litem and the court were all apprised and fully aware of the ex-

tent of the ward's interest in the machinery. No one was misled, and if anyone has a right of complaint, it is the respondent, who is completely satisfied.

We find no error, and the lower court's judgment is, therefore, affirmed.

*Affirmed.*

BLUME, C.J., and RINER, J., concur.