**In the Matter of the Appointment of a Guardian for Grace E. ELLINGSWORTH.**

Court of Chancery of Delaware,
New Castle.

May 5, 1970.

Charles M. Allmond, III, of Allmond & Wood, Wilmington, for the heirs of Miss Grace Ellingsworth.

George F. Gardner, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for movant Sidney Stat, M.D.

MARVEL, Vice Chancellor:

On November 9, 1936, Sidney Stat, M.D. and Grace E. Ellingsworth acquired title to premises at 216 West 14th Street in Wilmington as "joint tenants and not as tenants in common." The property thus acquired was thereafter held by Dr. Stat and Miss Ellingsworth as joint tenants with the right of survivorship for almost twenty-nine years until Miss Ellingsworth became ill and infirm and thus unable to deal with her interest in such property.

On September 9, 1965, Wilmington Trust Company was appointed guardian of Miss Ellingsworth's estate, she having been adjudged a mentally infirm person pursuant to the provisions of 12 Del.C. § 3914.

Following the appointment of such guardian, some effort was made by the joint owners, primarily by the guardian, to exchange information concerning the rental status of the property. However, ultimately, Dr. Stat received a letter from the guardian, dated July 14, 1967, informing him that because of poor rentals and poor prospects for the investment involved, it intended to initiate partition proceedings to sell Miss Ellingsworth's joint interest.

On October 17, 1967, the guardian then presented an ex parte petition to this Court for authority to convey its ward's interest in the property in question to a straw party, who would, according to the petition, then reconvey title to the guardian for the purpose of initiating partition proceedings. The intent of such straw conveyance was, of course, to break the joint tenancy and leave Miss Ellingsworth and Dr. Stat each as a tenant in common of an undivided one-half interest in the property in question.

In support of its petition the guardian relied on a history of poor rental returns on the property and the fact that it had been unable to come to any agreement with Dr. Stat concerning the disposition of the property. No evidence, however, as to rentals was presented to the Court, and no notice of the proceeding or opportunity to be heard was afforded Dr. Stat. On October 17, 1967, the requested order was signed.

On October 26, 1967, pursuant to the terms of the order, the guardian conveyed the property to Charles M. Allmond, III, who immediately reconveyed title to the guardian.

On November 6, 1967, eleven days following the execution and recording of the aforesaid deeds, Miss Ellingsworth died intestate and without issue. On December 19, 1967, Dr. Stat was informed by the guardian concerning the straw conveyances which purported to eliminate his right of survivorship in the property.

Next, on April 29, 1969, the guardian filed a petition in Orphans' Court seeking a partition and sale of its ward's interest in such property. Dr. Stat thereupon counterclaimed, praying that the Orphans' Court adjudge him to be the sole owner of the property as the surviving joint tenant and that the court cancel the deeds to and from the straw party. He also asked that the heirs of Grace E. Ellingsworth be enjoined from asserting any claim to the property and that a certified copy of the judgment to be ordered entered therein be recorded. Since the validity of an order of this Court was thereby brought in issue, the Orphans' Court action was stayed until further action by this Court. Dr. Stat now moves for the vacating of this Court's ex parte order of October 17, 1967.

It has been held that a severance of a joint tenancy may be accomplished by the act, voluntary or involuntary, of either of the joint tenants, New Haven Trolley and Bus Emp. Credit Union v. Hill, 145 Conn. 332, 142 A.2d 730, and 48 C.J.S. Joint Tenancy § 4. However, the common law was careful to preserve the distinction between real and personal estates, princi-

pally perhaps because of the difference in the respective laws of succession applicable to such classes of property. Thus, it was not permissible for a guardian to convert real estate into personalty or personalty into real property except for reasons which had been passed upon by a court of competent jurisdiction, 39 Am.Jur.2d, Guardian and Ward, § 125. This distinction persists today so that as a result a guardian may not dispose of a ward's real estate without prior court approval, In re Reeves, 10 Del. Ch. 324, 92 A. 246, and In re duPont, 41 Del.Ch. 300, 194 A.2d 309, and compare Bank of Delaware v. Hargraves (Del.Ch.) 242 A.2d 472. But see, In re Guardianship of Hilton's Estate, 72 Wyo. 389, 265 P.2d 747, 43 A.L.R.2d 1429.

■ The movant suggests that the guardian's exercise of the right to convey Miss Ellingsworth's interest in the joint tenancy in question was an improper exercise of her personal rights by the guardian. I am satisfied, however, that a joint tenancy in land is an interest which can be sold at the option of either joint tenant, including a guardian of such a tenant, although the practical effect of such a sale is to destroy the joint tenancy itself. To hold otherwise would create a situation which would freeze a ward's interest when a guardian is appointed for the estate of a joint tenant and reduce such interest to a life estate with a mere possibility of survivorship.

In In re duPont, supra, former Chancellor Seitz permitted certain portions of a ward's property to be sold and distributed as gifts. In doing so, he adopted the so-called substitution of judgment rule, a creature of equity which was developed in England, Ex parte Whitbread, 2 Mer. 99, 35 Eng.Rep. 878, and has since been adopted in many jurisdictions in this country. See In re Fleming's Estate, 173 Misc. 851,

19 N.Y.S.2d 234, In re Brice's Guardianship, 233 Iowa 183, 8 N.W.2d 576, and Potter v. Berry, 53 N.J.Eq. 151, 32 A. 259, 34 L.R.A. 297. Such principle is based on the postulate that a court of equity should deal with property of its ward in the manner such ward would have adopted had he been sane, competent, or of age.

By statute, the trustee of a mentally ill person may do "whatever is necessary for the care, preservation and increase of his estate.", 12 Del.C. § 3705. In the duPont case, former Chancellor Seitz held that such statute applied to the estates of infirm persons, 12 Del.C. § 3914(d) and that unless such statute were given a broad interpretation so as to allow for "some element of flexibility * * * the court would be unable to deal adequately with different conditions and circumstances as they arise" in determining what an incompetent's intention might be.

■ I think it necessarily follows from a reading of the duPont case that in order for this Court properly to determine the probable intent of an incompetent or mentally ill person in a situation such as the one under attack, a hearing must be held for the purpose of apprising the Court of the wishes and attitudes of such person, which, if effected, may or may not increase an infirm person's material estate. A hearing designed to probe Miss Ellingsworth's probable course of action in the situation confronting the guardian was not conducted in the case at bar, and the ex parte order heretofore entered herein may not stand.

The Court's order of October 17, 1967, will be vacated, and the two straw deeds which conveyed the interest of Miss Ellingsworth to a straw party and back to the guardian will be cancelled.

Order on notice.