James M. Kinney, the adopted son of Jay and Almira Kinney, appealed from a county court order authorizing First National Bank, the conservator of Almira's estate, to sell Almira's automobile, homestead, and household goods in a commercially reasonable manner and to invest the proceeds from the sale. We affirm. *Page 70 
Almira suffers from senility as a result of Parkinson's disease and resides in a nursing home in Larimore. Almira's husband, Jay, died in 1991, and her brother, Earl Wall, petitioned the county court for appointment of a guardian and a conservator. The court appointed First National as conservator of Almira's estate with "full authority over all financial decision making." The court also appointed Willard Kinney, Wall, and James as Almira's guardians with no authority to use her property without approval by First National.
Meanwhile, James and his family moved into the homestead in Manvel, North Dakota. First National petitioned the county court for authorization to sell Almira's automobile, homestead, and household goods in a commercially reasonable manner and to invest the proceeds from the sale. At the hearing on the petition, counsel outlined First National's position:
 "It really is to get an order from the Court as to what's going to be done with this residence property under these particular circumstances and there are unique circumstances here. It isn't that this property is empty; the ward's son and . . . family are living there. But I think as the Court realizes, the conservator must make this property productive or there must be a determination that the situation is such that it should not be sold and if they aren't going to charge any rent then there has to be an order to the effect that under these particular circumstances they shouldn't charge any rent. And that really is why we're here. The conservator isn't really taking an adamant position in the matter one way or the other but simply recognizes if they don't do something they will have a significant exposure."
At that March 2, 1992 hearing, James testified that he wanted to purchase the homestead, but because of a recent bankruptcy which affected his credit rating, he could not obtain financing until October 1992. James proposed to
 "pay the real estate taxes on the house beginning as of the first of '92, January 1 of '92; to pay the utilities on the house; any minor repairs [up to $100] on the house; to take over the insurance on the property to guarantee that the estate would not have to put out anything at that time until we were in a position to purchase the home ourselves."
After the hearing, the county court concluded that First National was authorized to sell the property for Almira's support under the order appointing First National as conservator; Jay's will; and Sections 30.1-29-24(3)(g) and30.1-29-25(1), N.D.C.C. The court determined that when Almira's nursing home benefits terminated on September 1, 1994, her estate's yearly expenses would exceed its income by $2,070.86 and that her estate was insufficient to adequately provide for her future needs unless the proceeds from the sale of these non-income producing assets were reinvested. The court authorized First National to sell the automobile, homestead, and household goods in a commercially reasonable manner and to invest the proceeds from the sale. James appealed.
James argues that the county court abused its discretion in authorizing First National to sell the homestead. He asserts that the court's order was unreasonable, arbitrary, and unnecessary until September 1, 1994, and that a delay in selling the homestead until he could get financing on October 1, 1992, would have had no serious effect on Almira's estate.[1] First National responds that the court's decision was not clearly erroneous.
Our determination of the applicable standard of review requires a description of the statutory provisions for conservatorships. Ch. 30.1-29, N.D.C.C., is part of our enactment *Page 71 
of the Uniform Probate Code (Title 30.1, N.D.C.C.), and deals with conservatorships for the protection of property of persons under disability.
Section 30.1-29-17, N.D.C.C., requires a conservator to act as a fiduciary and, in dealing with a protected person's estate, to observe the standard of care applicable to trustees under Section 30.1-34-02, N.D.C.C., i.e., to act as a prudent person dealing with the property of another. Section 30.1-29-24, N.D.C.C., generally describes a conservator's powers in administering the protected person's estate. Subsection (1) reiterates that the laws pertaining to trustees are applicable to conservators. Subsections (2) and (3) further delineate a conservator's broad, unrestricted powers and, among other things, authorize a conservator, without court approval and acting reasonably to accomplish the purpose of the appointment, to dispose of the protected person's real property at a public or private sale. In Thompson v. First National Bank,269 N.W.2d 763 (N.D. 1978), this court said that a conservator's unrestricted powers under Section 30.1-29-24, N.D.C.C., were discretionary. Thus, subject to the conservator's fiduciary responsibilities and the prudent person standard of care in dealing with the protected person's estate, a conservator has discretionary authority to sell the protected person's real property without court approval.
Nevertheless, Section 30.1-29-16(2), N.D.C.C., allows the conservator to petition the supervising court for instructions regarding the conservator's fiduciary responsibility. Section30.1-29-08(2)(c), N.D.C.C., authorizes the court directly, or through a conservator, to exercise all the powers the protected person could exercise, except the power to make a will. Those broad powers include the authority to convey interests in property. Section 30.1-29-08, N.D.C.C., thus gives the supervising court and the conservator similar authority regarding a protected person's real property.
In considering a supervising court's authority to order a conveyance of a protected person's property under similar statutory provisions, other jurisdictions have reviewed the supervising court's decision under an abuse of discretion standard. Matter of Guardianship of F.E.H., 154 Wis.2d 576,453 N.W.2d 882 (1990); In re Guardianship of Fingerholtz,357 N.W.2d 423 (Minn.Ct.App. 1984); Re Hilton's Estate, 72 Wyo. 389,265 P.2d 747 (1954); see Annot., Power of Court to Confirm Sale ofWard's Property Over Objection of Guardian, 43 A.L.R.2d 1445 (1955). Cf. Annot., Power of Court or Guardian to MakeNoncharitable Gifts or Allowances Out of Funds of IncompetentWard, 24 A.L.R.3d 863 (1969). Because a supervising court and a conservator have similar discretionary authority regarding a protected person's estate and the foregoing authorities indicate that a supervising court's decision regarding that property is reviewable under an abuse of discretion standard, we review the county court's decision authorizing First National to sell Almira's homestead under that standard.
A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. E.g. Wall v.Pennsylvania Life Ins. Co., 274 N.W.2d 208 (N.D. 1979). We believe a trial court acts in an arbitrary, unreasonable, or unconscionable manner when the exercise of discretion is not, in the words of the Wisconsin Supreme Court, "the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination."Matter of Altshuler, 171 Wis.2d 1, 490 N.W.2d 1, 3 (1992), quoting Hartung v. Hartung, 102 Wis.2d 58, 66, 306 N.W.2d 16, 20 (1981). That formulation gives some substance to a relatively nebulous standard and facilitates meaningful appellate review of a trial court's exercise of discretion. Cf. Heller v.Heller, 367 N.W.2d 179 (N.D. 1985) [a trial court abuses its discretion if it misinterprets or misapplies the law]. Accordingly, we use that formulation in this case.
In authorizing the sale of the homestead, the county court cited the order appointing a conservator for Almira's estate, which granted First National "full *Page 72 
authority over all financial decision making." The court also considered the financial condition of Almira's estate and found that it was not sufficient to adequately provide for her future needs unless the non-income producing assets were sold. The court thus recognized the conservator's fiduciary responsibility to the protected person and the conservator's duty to expend sums for the support, care, and benefit of the protected person. Sections 30.1-29-17 and 30.1-29-25(1), N.D.C.C. The court also recognized that Jay's will granted the trustee of his estate, First National, authority to sell property if there was insufficient income to provide for Almira's care. In dealing with a protected person's estate, the preservation of a known estate plan is a permissible consideration for a conservator and a supervising court. Section 30.1-29-27, N.D.C.C. The county court also relied upon a request by Almira's guardian ad litem that James vacate the homestead and upon the order appointing a guardian which stated that "none of the guardians may use the ward's property, including the house in Manvel and the ward's car, unless preapproved by the conservator."
James asserts that Section 30.1-29-25(2), N.D.C.C., authorizes the conservator to "make gifts to charity and other objects as the protected person might have been expected to make." He argues that he clearly needs temporary assistance, and under that statute, Almira would have provided him additional time to purchase the homestead. However, Section 30.1-29-25(2), N.D.C.C., is not applicable unless "the estate is ample to provide for the purposes implicit in the distributions authorized by" Section 30.1-29-25(1), N.D.C.C., for "the support, education, care, or benefit of the protected person and his dependents." Here, the court determined that James had the ability to support his family and that Almira's estate was not large enough to provide for her future needs unless the non-income producing assets were sold. Under these circumstances, we are not persuaded that Section 30.1-29-25(2), N.D.C.C., required the court to reach a different result.
We believe the county court's decision was the product of a rational mental process by which the facts in the record and the applicable law were considered together to achieve a reasoned and reasonable determination. We conclude that the court did not abuse its discretion in authorizing First National to sell the homestead.
Accordingly, we affirm the county court order.
MESCHKE and LEVINE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.
Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as Surrogate Judge for this case pursuant to Section 27-17-03, N.D.C.C.
Justice J. PHILIP JOHNSON, who was a member of this Court when this case was heard, did not participate in this decision.
Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.
[1] The automobile has already been sold and, on appeal, James has not raised any issue regarding that sale. The conservator has received an offer to purchase the homestead from James's aunt, Leila Kinney. Pending appeal, the county court stayed the sale of the homestead on the condition that James pay utilities and $500 per month rent. First National and Leila have entered into an earnest money agreement which states that it is void if the county court's order is reversed on appeal.